J-A05037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARMAINE TYLER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUTH HOOVER | : | No. 656 EDA 2022 |

Appeal from the Judgment Entered February 17, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No. 190606965

| | | |
|---|---|---|
| CHARMAINE TYLER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RUTH HOOVER | : | |
| | : | |
| Appellant | : | No. 663 EDA 2022 |

Appeal from the Judgment Entered February 17, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No. 190606965

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 24, 2023**

This appeal and cross-appeal arise from a judgment in favor of Charmaine Tyler (Tyler), entered after a jury trial on her successful personal injury action against Ruth Hoover (Hoover).  Hoover appeals the judgment entered against her.  Tyler, in her cross-appeal, challenges the court's denial of her post-trial motion for delay damages.  Upon careful consideration, we

affirm the judgment against Hoover, reverse the denial of Tyler's post-trial

motion, and remand with instructions.

The trial court detailed the case history, beginning with the procedural

posture, as follows:

> On June 24, 2019, [Tyler] commenced her civil action by filing a complaint in the Court of Common Pleas - Philadelphia County. [Tyler] filed an affidavit of service on July 16, 2019. On August 20, 2019, [Hoover] filed her answer with new matter to [Tyler's] complaint. A reply to [Hoover's] new matter was filed on September 3, 2019.
>
> The first discovery motion filed by [Hoover] was a motion to compel answers and production of documents dated September 11, 2019[,] relating to interrogatories sent to [Tyler] on July 24, 2019. On September 23, 2019, upon consideration of the motion, [the trial court] ordered … that [Tyler] provide full, complete, and verified answers to interrogatories and requests for production of documents within twenty (20) days or risk court sanctions.
>
> [Hoover] filed a motion for sanctions on November 14, 2019. On December 4, 2019, certification prerequisite to service of subpoenas was filed by [Hoover]. [Hoover] filed a motion to compel deposition on December 9, 2019. On December 23, 2019, the [trial court] granted [Hoover's] motion to compel deposition and ordered [] Tyler to appear at her deposition or risk sanctions by the court.
>
> [Hoover] filed a motion to compel subpoena compliance on January 29, 2020. On February 11, 2020, the [trial court] granted [Hoover's] Motion. [Hoover] filed three discovery motions on March 2, 2020. [Hoover] first filed a motion to compel answers to interrogatories. [Hoover] further filed a motion to compel answers and production of documents[,] and a motion for sanctions.
>
> On the same day, March 2, 2020, [Hover] filed a motion for extraordinary relief. Subsequent to [Hoover's] motion, [Hoover] withdrew the motion to compel interrogatories filed that day. [Hoover's] motion for extraordinary relief was granted … that day,

and a revised case management order was issued, extending deadlines by sixty (60) days.

[Hoover] filed further motions for sanctions on May 15, 2020[,] and June 22, 2020. On July 8, 2020, [Hoover] filed a motion for extraordinary relief. The motion was granted … on July 23, 2020, once again extending case management deadlines for another sixty (60) days.

On September 28, 2020, [Hoover] filed a motion for sanctions against third party medical imaging service Advanced Diagnostics.[1] The motion was granted on October 14, 2020. On November 19, 2020, a second motion for sanctions against [Advanced Diagnostics] was filed by [Hoover]. This motion was granted on December 15, 2020[; the trial court ordered Advanced Diagnostics to "provide any and all records, including films of diagnostic testing from July 2 and July 9, 2018, pertaining to Tyler…." Order, 12/15/20.] On January 25, 2021, [Hoover] filed a motion for sanctions concerning Advanced Diagnostics' failure to comply with [a] subpoena. The [motion] was denied … on February 8, 2021.

On October 14, 2021, [Hoover] filed two motions *in limine* seeking to preclude both evidence of Advanced Diagnostics' cervical MRI dated July 2, 2018[,] and the testimony of [Tyler's

_____

[1] Advanced Diagnostics performed scans of Tyler's spine both prior to and after the May 24, 2018, car accident, via magnetic resonance imaging (MRI). **See** Motion *In Limine,* 10/14/21, Ex. C. Hoover requested discovery from Advanced Diagnostics. According to Hoover, Advanced Diagnostics "did produce reports, and MRI films, for multiple evaluations of [] Tyler, but did not produce" MRI films dated July 2, 2018, and July 9, 2018, which Hoover repeatedly requested. **Id.** ¶ 3 (citing Ex. C); **see also id.** ¶ 7 (stating Advanced Diagnostics had responded to Hoover's discovery requests for the MRI films via correspondence which claimed "Advanced Diagnostics experienced a system malfunction" in 2018 which "corrupted" certain "irretrievable" MRI films).

medical expert,] Gerald Dworkin, [D.O. (Dr. Dworkin).[2, 3]] [Hoover] filed a subsequent motion *in limine* to preclude the testimony of representatives of [medical provider] BalaCare

---

[2] Dr. Dworkin issued an expert report dated December 2, 2019, after he treated Tyler and assessed her medical history. Dr. Dworkin detailed his treatment and the results of medical imaging scans that were performed on Tyler after the May 24, 2018 car accident. *See* Dr. Dworkin Report, 12/2/19, at 1-2 (attached to Hoover's October 14, 2021, motion *in limine* with respect to Dr. Dworkin as Ex. D). Dr. Dworkin opined:

Tyler suffers from serious and permanent injury to bodily function vis-à-vis cervical and lumbar spine segments including but not limited to soft tissue, muscle ligament, disc, and nerve roots. These impairments are serious, permanent, and secondary [in] their entirety to the 05/24/2018 trauma.

*Id.* at 3; *see also id.* (stating the above conditions are "associated with significant physical capacity limitation disability…."). Dr. Dworkin concluded, "[Tyler] will, in my opinion, [] within [a] reasonable degree of medical certainty[,] require ongoing medical care as a result of these injuries and their progression over the next three to five years at a minimum." *Id.* at 4.

[3] In Hoover's motion *in limine* with respect to Dr. Dworkin, she claimed his expert testimony was inadmissible because:

Dr. Dworkin [] admitted that he relied entirely upon his interpretation of reports of diagnostic MRI films dated July 2, 2018, and July 9, 201[8], which have never been produced and which apparently do not exist. …

During discovery, the records of Advanced Diagnostics were subpoenaed…. There are no reports, much less films, produced by Advanced Diagnostics dated July 2, 2018, or July 9, 2018.

* * *

Because the opinions expressed by Dr. Dworkin … are dependent upon his interpretation of the non-existing MRI films, all such testimony should be precluded from evidence.

Supplemental Memorandum of Law, 11/12/21, at 1-2 (citation to exhibit omitted).

Solutions on October 15, 2021[. Hoover claimed such testimony would be inadmissible as being "wholly dependent upon admissibility of evidence produced through a report of [Dr.] Dworkin," which itself was inadmissible for reasons stated above. Motion *In Limine*, 10/15/21, ¶ 3]. On November 1, 2021, [Tyler] filed answers in opposition [to Hoover's] motions *in limine*. The [trial] court denied these motions.

The trial began with an eight-member jury on November 15, 2021. [Dr. Dworkin testified, over Hoover's objection, consistent with his expert report.] The jury returned a 7/8 verdict in favor of [Tyler] on November 17, 2021. On November 23, 2021[, Tyler] filed a post-trial motion seeking delay damages. [The same day, Hoover filed a post-trial motion seeking a new trial, [judgment notwithstanding the verdict (Judgment N.O.V.), or a remittitur.] [Tyler's] post-trial motion for delay damages pursuant to Pa.R.C.P. 238 was denied by [the trial] court on February 17, 2022. [The court denied Hoover's post-trial motion seeking a new trial/Judgment N.O.V. by a separate order entered the same date, and entered judgment in favor of Tyler in the amount of the jury's award, $188,632.]

## FACTS

… On May 2[4], 2018, [Tyler] was the operator of a motor vehicle on the University Avenue I-76 ramp. N.T., 11/15/21, at 94, 132; N.T., 11/17/21, at 36. On this [Thursday] afternoon, traffic was particularly congested. N.T., 11/15/21, at 94-95. [Tyler's] SUV was thereafter rear-ended by [Hoover's] car. ***Id.*** The parties exchanged information, took photographs, and left the scene. ***Id.*** at 95-96. No police report was filed. ***Id.***

Prior to the motor vehicle accident, [Tyler] participated in physical therapy continuously from January of 2018 for various left side, back, and neck pain. ***Id.*** at 104. [Tyler] would continue physical therapy after the accident[, according to Dr. Dworkin,] "[b]ecause of the increasing nature of her pain." [Dr.] Dworkin Depo., [11/8/21], at 31. Physical therapy continued for several months. ***Id.*** [Tyler] also sought out further treatments, including an MRI of the neck region on July 2, 2018[,] and an MRI of the lower back on July 9, 2018. ***Id.*** at 41. [Tyler] had also undergone EMG [medical imaging] testing on September 13, 2018[,] and September 24, 2018. [Dr.] Dworkin Expert Report, [12/2/19,] at 2. A physical examination of [Tyler's] cervical and lumbar regions

-5-

was performed by … Dr. Dworkin on March 9, 2019. ***Id.*** On December []9, 2019, BalaCare Solutions produced [an expert] report[, and a subsequent updated expert report,] representing future medical costs [Tyler] would [incur] as a result of the … motor vehicle accident. BalaCare Solutions Expert Report[s, 12/9/19 & 5/4/21 (respectively) (attached to Hoover's October 15, 2020, Motion *In Limine* as Exs. B & C).]

Trial Court Opinion, 8/19/22, at 1-4 (footnotes added; footnote citations moved to body and modified; emphasis omitted).

Both parties timely appealed.[4] The parties and the trial court have complied with Pa.R.A.P. 1925.

Hoover presents nine issues for review:

1. Whether Judgment N.O.V. is required because [Hoover] is clearly entitled to relief where the jury found as a fact that [Tyler] did not sustain a serious injury, *i.e.* a serious impairment of bodily function?

2. Whether Judgment N.O.V. is warranted because the [trial c]ourt erred in admitting expert testimony about future medical treatment and costs predicated on the admission of testimony relying on authenticated reports of non-existent MRI films?

3. Whether, in the alternative, this Court[] should order a new trial at which [Tyler's] entitlement to future economic losses will be litigated?

4. Whether a new trial is required because the trial court erroneously admitted expert medical testimony based on unauthenticated MRI reports of non-produced and non-existing MRI films?

5. Whether a new trial is required because the trial court erroneously allowed [Tyler's] medical expert to offer testimony beyond the scope of his report?

---

[4] This Court consolidated the appeals on April 26, 2022.

6. Whether a new trial is required because the trial court erroneously allowed testimony from [Tyler's] medical cost expert relying on the inadmissible testimony of [Tyler's] medical expert based upon an unauthenticated report of MRI films which were never produced and which do not exist?

7. Whether a new trial is required to consider remittitur of the future damages awarded?

8. Whether Judgment N.O.V., or a new trial, is required because the trial court in considering motions for post-trial relief did not view the evidence in the light most favorable to the verdict winner?

9. Whether Judgment N.O.V., or a new trial, is required because the trial court in considering motions for post-trial relief, failed to address the most critical issue in the case, *i.e.* the unauthenticated reports of non-produced and non-existing MRI films?

Hoover's Appellant Brief at 9.

Tyler, in her cross-appeal, presents a single issue:

Whether the trial court abused its discretion and otherwise committed an error of law when it improperly denied [Tyler's] post-trial motion for delay damages by way of order dated February 11, 2022 and supporting opinion dated August 19, 2022?

Tyler's Cross-Appellant Brief at 7 (capitalization modified).

**Hoover's Appeal at 663 EDA 2022**

Hoover includes nine issues in her statement of questions, but argues only five issues in contravention of our Rules of Appellate Procedure. **See** Hoover's Appellant Brief at 9, 28-48; **see also** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). We address Hoover's five issues because the discrepancy does

not impede review. ***See Donahue v. Fed. Express Corp.***, 753 A.2d 238, 241 n.3 (Pa. Super. 2000).

**(1)** **[Whether] Judgment N.O.V. or a new trial is warranted due to the admission of prejudicial and inadmissible expert testimony relying on unauthenticated reports of non-existing MRI films.**

Hoover argues the trial court

wrongly allowed testimony [by Dr. Dworkin] … based on unauthenticated reports of MRI films of [Tyler] dated July 2, 2018 and July 9, 2018[,] which were never produced in discovery by [Tyler] and [were] not produced pursuant to a subpoena directed to the radiology group Advanced Diagnostics, despite three court orders, and which were never properly authenticated. Amazingly, the trial court makes no mention of [Hoover's] repeated objections to evidence based on the unauthenticated report of the non-produced MRI films and does not mention the word "unauthenticated" and makes no reference to Rule 901 of the Pennsylvania Rules of Evidence or other rules which would prohibit the use of such evidence.

Hoover's Appellant Brief at 28. Hoover further maintains:

The error in allowing the testimony of Dr. Dworkin was compounded when medical costs projectionist Alisa Dayanim [(Dayanim)] was permitted to offer expert testimony concerning the costs of future medical care. By relying solely on Dr. Dworkin's report, based upon the unauthenticated report of MRI studies, [Dayanim] assigned cost values for projected medical care and arrived at a total of $358,490 as the total lifetime cost of care for injuries to [Tyler's] cervical spine, with $231,901 attributable to one-time cost for an anterior cervical fusion.

***Id.*** at 30 (record citations omitted). Hoover complains this evidence "was clearly prejudicial and misled the jury, and it should have been excluded under Rule 403 and Rule 901 of the Pennsylvania Rules of Evidence." ***Id.*** at 32.

We begin with our standards of review. We have explained:

-8-

> Our standard[s] of review when considering the motions for a directed verdict and [Judgment N.O.V.] are identical. We will reverse a trial court's grant or denial of [Judgment N.O.V.] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.
>
> There are two bases upon which [Judgment N.O.V.] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in [its] favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Hall v. Episcopal Long Term Care*, 54 A.3d 381, 395 (Pa. Super. 2012) (citations omitted).

Our standard of review regarding a trial court's denial of a motion for a new trial is limited: "The power to grant a new trial lies inherently with the trial court and we will not reverse its decision absent a clear abuse of discretion or an error of law which controls the outcome of the case." *Maya v. Johnson & Johnson & McNeil-PPC, Inc.* (*In re McNeill-PPC*), 97 A.3d 1203, 1224 (Pa. Super. 2014) (citation omitted). We employ a two-part analysis: First, we determine if an error occurred. If so, we ascertain "whether the error resulted in prejudice necessitating a new trial." *Czimmer v. Janssen Pharms., Inc.*, 122 A.3d 1043, 1051 (Pa. Super. 2015) (citation omitted). Second, we ascertain whether the error affected the verdict. *Knowles v. Levan*, 15 A.3d 504, 507 (Pa. Super. 2011). The

"[c]onsideration of all new trial claims is grounded firmly in the harmless error doctrine[.]" *Id.* (citation omitted).

We next examine whether Hoover preserved this issue. *See*, *e.g.*, *Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007) (explaining "[t]he fact [a]ppellants filed a timely [court-ordered] Pa.R.A.P. 1925(b) statement does not automatically equate with issue preservation.").

> Pa.R.A.P. 1925(b) provides that a judge entering an order giving rise to a notice of appeal "may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal [ ]." Rule 1925 also states that **"[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."** Pa.R.A.P. 1925(b)(4)(vii). In ***Commonwealth v. Lord***, 553 Pa. 415, 719 A.2d 306 (1998), our Supreme Court held that "from this date forward, in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." ***Lord***, 719 A.2d at 309. This Court has held that "[o]ur Supreme Court intended the holding in ***Lord*** to operate as a bright-line rule, such that 'failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in **automatic waiver** of the issues raised.'" ***Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.***, 2014 PA Super 50, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (emphasis in original).

***U.S. Bank, N.A. v. Hua***, 193 A.3d 994, 996-97 (Pa. Super. 2018) (some citations omitted, emphasis added); ***see also Greater Erie Indus. Dev. Corp.***, 88 A.3d at 224 ("it is no longer within this Court's discretion to ignore the internal deficiencies of Rule 1925(b) statements.").

In addition,

> Rule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all.

***Tucker***, 939 A.2d at 346 (citations omitted).

Although Hoover filed a Rule 1925(b) statement, she never mentioned violation of the Pennsylvania Rules of Evidence, or alleged violations of Rules 403, 802, 803(6)(D) and 901 identified in her brief. **See** Hoover's Appellant Brief, at 32-33; Statement of Errors Complained of on Appeal, 3/15/22, at 1-6. The trial court did not address this issue in its opinion.[5] **See generally**, Trial Court Opinion, 8/19/22, at 5-24. Accordingly, Hoover waived her first issue.

Even if Hoover had not waived this issue, she provides no legal support. While Hoover generally cites cases discussing the Rules of Evidence, none of the cases suggest the Rules of Evidence apply to documents Tyler did not seek to admit into evidence; the documents were a resource for Dr. Dworkin in preparing his expert report and testimony. **See Coulter v. Ramsden**, 94 A.3d 1080, 1088 (Pa. Super. 2014) ("We need not reach the merits of this issue because the argument section of [the a]ppellant's brief merely consists of general statements unsupported by any discussion and analysis of relevant

---

[5] The purpose of a Rule 1925(b) statement is to afford the trial court the opportunity to explain its ruling and correct any error. **See Tucker**, 939 A.2d at 346.

-11-

legal authority."); ***In re R.D.***, 44 A.3d 657, 674 (Pa. Super. 2012) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record **and with citations to legal authorities**.") (citation omitted, emphasis added).

Waiver notwithstanding, we would agree with the trial court's statement that its denial of Hoover's request

> to preclude all references to the July 2, 2018 MRI report [and to preclude Dr. Dworkin from testifying] was proper. It is well understood that medical experts may rely on reports customarily relied upon in their profession. *See **Primavera v. Celotex Corporation***, 608 A.2d 515 (Pa. Super. 1992); ***See*** Pa.R.E. 703. … [N]either did the [trial c]ourt err when permitting BalaCare representative Ms. Dayanim to testify about [Tyler's] future medical costs. Ms. Dayanim, a registered nurse, was permitted to use Dr. Dworkin's diagnoses to underlie her report.
>
> * * *
>
> As the Superior Court has stated, "to preclude the testimony of a witness is a drastic sanction, and it should be done only where the facts of the case make it necessary." ***Jacobs v. Chatwani***, 922 A.2d 950, 962 (Pa. Super. 2007).
>
> Under Pennsylvania Rule of Evidence 703, an expert's opinion must be "based on facts or data in a particular case." Pa.R.E. 703. [Hoover] contends that "An expert cannot base his opinion upon facts which are not warranted by the record." ***Collins v. Hand***, 246 A.2d 398 (Pa. Super. 1968). However, in ***Primavera***, the Superior Court addressed the extent to which an expert witness may rely on information generated by other professionals who are not subject to cross-examination. ***See Primavera***, 608 A.2d 515. As ***Primavera*** established, if an expert has made faulty assumptions or leaps of judgment in relying on certain sources or in forming conclusions based on those sources, he should be cross examined about his assumptions, etc. ***Id.*** at 520.

As the [*Primavera*] Court explained:

[]It is well understood that medical experts are permitted to express opinions which are based, in part, upon reports which are not in evidence, but which are customarily relied upon by experts in the practice of the profession....  The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material when it is presented through a qualified expert's eyes.[]

*Primavera*, 608 A.2d at 518-[]21.

In our case, Hoover's contention is unsupported by the law. Dr. Dworkin stated during cross-examination that his reliance on MRI reports without MRI films is sound.  [Dr.] Dworkin also testified that he does not have access to MRI films "80 to 90 percent of the time," and that an MRI report authored by a neuroradiologist is sufficient to show the July 2, 2018 MRI occurred and that its findings are reliable.

Moreover, the July 2, 2018 MRI report that underlies, in part, the factual basis of Dr. Dworkin's testimony is precisely the kind of evidence that *Primavera* legitimizes.  In *Primavera*, a doctor was permitted to use the reports of other doctors who were not available to testify in an asbestos action.  There, the *Primavera* Court found that a doctor's reliance on medical records produced by medical professionals not subject to cross-examination was proper, where the reports formed only a small portion of the data that the expert relied on to form his in-court conclusions.  *Id.* at 518.  This is especially true when an expert relied on his personal observations and firsthand knowledge of medical evidence.  *Id.*

In our case, during direct examination, Dr. Dworkin [] elaborated that he can form his opinion on "medical conditions" without an MRI film, … that having a full report from the neuroradiologist is akin to seeing the films on his own, that ample data existed on the record to support his opinion in the instant case, and that [Tyler's] physical history, EMG findings and MRI reports were sufficient to show [Tyler's] "clinical picture."  … Although Dr. Dworkin admitted that he never saw a film of

-13-

[Tyler's] July 2, 2018 cervical MRI, he was still able to base his opinion on data from a variety of sources.

In conclusion, the [trial c]ourt did not preclude Dr. Dworkin's testimony for two reasons. First, the Superior Court's ruling in **Primavera** and [**Jacobs**] precluded the [trial c]ourt from excluding the doctor's testimony. Second, [Hoover] had an opportunity to question and impeach Dr. Dworkin during cross examination. **Dr. Dworkin was in fact cross-examined about the factual underpinnings of his conclusions relating to [Tyler's] cervical spine even though the actual MRI films were never presented in [c]ourt.**

* * *

[T]he admission of Ms. Dayanim's testimony relating to [Tyler's] future costs was permissible. … In our case, the testimony of Ms. Dayanim relating to [Tyler's] projected future medical costs was not based solely on Dr. Dworkin's report as [Hoover] contends, but rather on a multitude of other sources. Ms. Dayanim testified that [Tyler's] total lifetime cost was based on documents she reviewed from various diagnostic and treatment clinics and billing records in addition to Dworkin's report.

In closing, Dayanim's future cost projection should not be precluded because she relied on a variety of information in compiling her report. As factual evidence underlies Dayanim's report, and [Hoover] had an opportunity to cross-examine her, the [trial c]ourt respectfully requests that this claim also be dismissed.

Trial Court Opinion, 8/19/22, at 5-12 (footnotes omitted, emphasis added).

The record supports the trial court's rationale for declining to grant a new trial or judgment N.O.V. **See id.** Hoover has not shown the trial court either abused its discretion or committed an error of law. **In re McNeill-PPC**, 97 A.3d at 1224; **Hall**, 54 A.3d at 395. Thus, even if not waived, Hoover's first claim would not merit relief.

-14-

**(2)  [Whether] Judgment N.O.V. or a new trial is required due to the admission of testimony of [Tyler's] medical expert beyond the scope of his report.**

Hoover again challenges the trial court's denial of judgment N.O.V. or a new trial.  She claims the trial court erred in allowing Dr. Dworkin "to offer testimony that [Tyler] will need future medical care to her low back, including epidural injections to her low back and 'the distinct medical possibility that she would require surgery both in the cervical region and **the lumber region**.'"  Hoover's Appellant Brief at 35-36 (emphasis in original).

Our standard of review is well settled.  The admissibility of evidence is within the sound discretion of the trial court, and we will not reverse absent an abuse of discretion.  ***Whitaker v. Frankford Hosp.***, 984 A.2d 512, 522 (Pa. Super. 2009) (trial court's admission of expert testimony will not be disturbed absent manifest abuse of discretion).  Expert testimony is admissible when it "involves explanations and inferences not within the range of ordinary training[,] knowledge, intelligence and experience." ***Commonwealth v. Walker***, 92 A.3d 766, 788 (Pa. 2014) (citation omitted).

We have further explained:

> [An] expert's testimony on direct examination is to be limited to the fair scope of the expert's pre-trial report.  In applying the fair scope rule, we focus on the word "fair."  Departure from the expert's report becomes a concern if the trial testimony would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the response.  Therefore, the opposing party must be prejudiced as a result of the testimony going beyond the fair scope of the expert's report before admission of the testimony is considered reversible error.

-15-

*Whitaker*, 984 A.2d at 522 (citation omitted).

Hoover's claim is belied by the record. In his report, Dr. Dworkin detailed the injuries to Tyler's cervical and lumbar regions. *See* Dr. Dworkin Report, 12/2/19, at 1-2; *see also id.* at 19 (diagnosing Tyler with "posttraumatic low back pain … [Tyler] suffers from serious and permanent injury to bodily functions vis-à-vis cervical and lumber spine segments[.]"). Dr. Dworkin stated Tyler would "require ongoing medical care as a result of **these injuries**[.]" *Id.* at 4 (emphasis added). Thus, in his report, Dr. Dworkin opined Tyler would require future treatment for **both** her cervical spine and lumbar spine injures. Dr. Dworkin concluded his report by predicting future treatment "**included but [would not be] limited to**" various treatments. *Id.* at 4 (emphasis added). The report put the parties on notice that the list of treatments was not exhaustive. Dr. Dworkin's testimony that Tyler might require future lumber spine surgery was within the "fair scope" of his expert report. *See Whitaker*, 984 A.2d at 522. Hoover's second issue merits no relief.

**(3)    [Whether] Judgment N.O.V. or a new trial is required due to the verdict being against the weight of the evidence.**

Hoover argues the jury's verdict was against the weight of the evidence. *See* Hoover's Appellant Brief at 38-43. Specifically, she contends "the jury found as a fact that [Tyler] did not sustain a serious injury" but

> returned a verdict for almost $200,000 for economic losses which [Tyler] did not sustain, and … will never sustain. It appears the

verdict was engendered by bias or prejudice against [Hoover], perhaps in an effort to punish her for causing the motor vehicle accident, or more likely, based upon the testimony of Dr. Dworkin suggesting [Tyler] might need future surgery to her lumb[a]r spine, which should have been excluded from evidence[.]

*Id.* at 38-40.

We recognize:

The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. An appellate court may not overturn the trial court's decision unless the trial court palpably abused its discretion in ruling on the weight claim. Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is so contrary to the evidence as to shock one's sense of justice.

….

A trial court's determination that a verdict was not against the interest of justice is [o]ne of the least assailable reasons for denying a new trial. A verdict is against the weight of the evidence where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

***Tong-Summerford v. Abington Mem'l Hosp. & Radiology Grp. of***

***Abington, P.C.***, 190 A.3d 631, 659 (Pa. Super. 2018) (citations omitted).

Our Supreme Court has explained:

While a jury's verdict and damages award are generally insulated from challenge, the grant of a new trial may be required to achieve justice in those instances where the original trial, because of taint, unfairness, or error, produces something other than a just and fair result, which is the principle goal of judicial proceedings. … [A] jury verdict may be set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or

corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Where the jury's verdict is so contrary to the evidence as to shock one's sense of justice a new trial should be awarded. [The Court] cautioned that it was within the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses, and if the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgement for the jury's….

*Mader v. Duquesne Light Co.*, 241 A.3d 600, 612-13 (Pa. 2020) (citations omitted).

The trial court correctly and concisely disposed of this issue, stating:

[T]here was substantial evidence in the record that a [j]ury could find favorably for [Tyler]. Dr. Dworkin testified on direct examination that [Tyler] suffered from severe traumatic cervical and neck injuries and had radiation of pain into both her left and right arm. … [Tyler] also had various lumbar injuries documented through an EMG [medical imaging scan], a physical examination, and an MRI.

Furthermore, [Tyler's] future medical expenses were projected to amount to $306,226.35. This projection was based upon specific timeframes and intervals wherein [Tyler] would need to seek further medical treatment over time resulting from her injuries in the instant action.

It is evident that the damages awarded to [Tyler] were not the result of mere speculation, but rather based on the evidence the [j]ury considered at [t]rial. … [L]arge verdicts are not necessarily excessive verdicts. *Gillingham v. Consol Energy. Inc.*, 51 A.3d 841, 857 (Pa. Super 2012). As such, there was sufficient evidence to warrant the [j]ury's verdict, so as to not shock one[']s sense of justice and render a new trial imperative.

Trial Court Opinion, 8/19/22 at 19-20 (footnotes omitted).

The record supports the trial court's analysis. The court did not

"palpably abuse its discretion" in denying Hoover's weight of the evidence

-18-

claim. ***Tong-Summerford***. 190 A.3d at 659. Hoover's third issue does not warrant relief.

**(4)** **The trial court applied an incorrect standard of review in denying [Hoover's] motion for post-trial relief.**

Hoover complains the trial court's opinion is deficient. Hoover's Appellant Brief at 43-45. She specifically argues, "The court below failed to recognize that [Hoover], not [Tyler] was the verdict winner." ***Id.*** at 45. She contends that because she was the verdict winner, the trial court "was required to view the evidence in the light most favorable to [Hoover]." ***Id.***

Hoover waived this claim because she did not raise it in her Rule 1925(b) statement.[6] ***See*** Statement of Errors Complained of on Appeal, 3/15/22, at 1-6; ***see also U.S. Bank, N.A.***, 193 A.3d at 996-97 (waiving issues not raised in Rule 1925(b) statement).

**(5)** **[Hoover] is entitled to a remittitur due to the grossly excessive, inconsistent and unwarranted award of future medical costs to [Tyler] who was not seriously injured and incurred no past medical expenses.**

Hoover claims she is entitled to remittitur, because "there is no rational explanation for the grossly excessive award of economic losses based on

---

[6] Regardless, we are unable to ascertain the factual basis for Hoover's contention that the jury rendered a defense verdict. The record indicates the verdict was "Jury [v]erdict for [Tyler]." Trial Work Sheet, 11/19/21, at 1. The verdict slip likewise indicates the jury found Hoover's negligence "a factual cause of the harm to [Tyler]." Verdict Slip, 11/17/21, at 1 (unnumbered). The jury awarded damages to Tyler for future medical costs of $188,632. ***Id.***

supposed future medical expenses."  Hoover's Appellant Brief at 47.  She

asserts:

> This is particularly so in a case where the undisputed evidence demonstrates [Tyler] sustained no out-pocket losses, no past medical expenses, no time lost from employment, and had not received any medical treatment whatsoever for two and a half years preceding trial in this matter.

> ***Id.***

As to the denial of remittitur,

> [o]ur standard of review … is circumspect and judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant.  The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption.  Furthermore, the decision to grant or deny remittitur is within the sole discretion of the trial court, and proper appellate review dictates this Court reverse such an Order **only if the trial court abused its discretion or committed an error of law** in evaluating a party's request for remittitur.

***Renna v. Schadt***, 64 A.3d 658, 671 (Pa. Super. 2013) (citations omitted and

formatting altered, emphasis added).

> The trial court explained its decision to deny remittitur:

> In the case at bar, [Tyler's] own expert, Dr. Dworkin, testified about [Tyler's] injuries and how they were objectively supported. … Dr. Dworkin characterized [Tyler's] injuries shown by the EMG reports, physical examination, and MRI reports as "devastating" and "difficult."  Finally, he concluded that [Tyler's] condition was subject to future "decline."

> Based on Dr. Dworkin's assessment, a future medical cost projection was created by [Tyler's] expert [Dayanim] on behalf of BalaCare solutions.  After considering [Tyler's] future care requirements, Ms. Dayanim calculated that [Tyler's] total lifetime

cost totaled $306,226.00. This included costs for diagnostic testing, epidural injections, physical therapy, and surgery.

In support of the medical testimonies, [Tyler] herself testified that her condition subsequent to the May 2018 motor vehicle accident changed drastically. She said that her pain, particularly in her lower back, worsened considerably. Her testimony clearly corroborated the objective evidence Dr. Dworkin presented. The [j]ury could consider all of this evidence in their deliberations.

[Hoover's] arguments supporting her motion for remittitur bare striking resemblance to those made by the [d]efense in **Guirlene v. Ryan**, 2020 WL 886048, *14 (Pa. Super. 2020) [(unpublished memorandum)].[7] Indeed, **Guirlene** forms the basis of [Hoover's] motion for post-trial relief concerning the damages awarded. [The trial court] will now explain that while the guidance in **Guirlene** is well taken, distinguishing facts and circumstances did not allow this [t]rial [c]ourt to grant [Hoover's] motion for remittitur.

The Superior Court in **Guirlene** affirmed the [t]rial [c]ourt's decision to grant a new trial, where the verdict in a negligence action was considered excessive. **Id.** Like the instant action, the [j]ury in **Guirlene** found that the plaintiff did not suffer a serious impairment of a bodily function. **Id.** at *9. Nonetheless, the [j]ury awarded the [p]laintiff $600,000 where future medical costs were projected to cost as much as $695,000. **Id.** at *12. In affirming the [t]rial [c]ourt's finding [that] the verdict [w]as excessive, the Superior Court analyzed factors that could render a damages award improper and warrant a new trial.

One factor that should be considered is the specificity of required future medical care. The Superior Court in **Guirlene** held that relief was not due where, in part, the [p]laintiff failed to offer a clear estimation of how frequently - and for how long - such treatments will likely occur. **Id.** at *12. The testimony of [p]laintiff's expert did not describe how often the [p]laintiff would need epidural injections, nor did it specify which of the surgeries

---

[7] Pa.R.A.P. 126(b) provides that unpublished Superior Court decisions filed after May 1, 2019, may be cited for persuasive value.

discussed during trial would be recommended for treatment. ***Id.*** at *12.

In our case, the report provided by BalaCare Solutions, specifically the summary of costs, depicts various potential future medical costs, including medical imaging, physical therapy, and other costs. Furthermore, unlike the [p]laintiff's expert medical witness in ***Guirlene***, Dr. Dworkin has identified one specific potential surgery for [Tyler] rather than two general surgeries not tailored to the actualities of the [p]laintiff. ***Id.*** at *13. Therefore, the facts of ***Guirlene*** are quite distinct from those in the instant case. For the foregoing reasons, the [trial c]ourt did not err when denying [Hoover's] motion for remittitur[.]

Trial Court Opinion, 8/19/22, at 21-24 (footnotes omitted, one footnote added).

We have reviewed the record and the pertinent law. Because the trial court committed neither an abuse of discretion nor an error of law, Hoover's final claim does not merit relief. ***Renna***, 64 A.3d at 671.

**Appeal of Tyler:  No. 656 EDA 2022**

**(1)  Whether the trial court abused its discretion and otherwise committed an error of law when it improperly denied [Tyler's] post-trial motion for delay damages by way of order dated February 11, 2022 and supporting opinion dated August 19, 2022**

Tyler argues the trial court "abused its discretion when it denied [her claim for] delay damages." Tyler's Appellant Brief at 12. Tyler observes that delay damages are a "means to sanction defendants for unreasonably refusing to settle meritorious claims" and the trial court, while acknowledging Hoover did not engage in settlement negotiations or make a written settlement offer, failed to address "this consideration." ***Id.***; ***see id.*** at 12-13. Tyler further

-22-

alleges the trial court made erroneous factual findings, including (a) finding that two continuance requests made by Hoover were joint requests; and (b) attributing delays to Tyler that were caused by a third party. *Id.* at 15-16. After a thorough review of the law and record, we agree.

> Pa.R.C.P. 238 provides:
>
> **(1)** At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, … damages for delay **shall be added** to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury ….
>
> **(2)** Damages for delay **shall be awarded** for the period of time from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision.
>
> * * *
>
> **(b)(1)** The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any,
>
>> (i) after the defendant made a written offer which complied with the requirements of subdivision (b)(2), provided that the plaintiff obtained a recovery which did not exceed the amount described in subdivision (b)(3), or
>>
>> (ii) during which the plaintiff caused delay of the trial.

Pa.R.C.P. 238(a)(1)-(2) and (3)(b)(1) (emphasis added).

> Instantly, the trial court opined:
>
> [Tyler's] request for delay damages is unwarranted. The instant civil action commenced on June 24, 2019. Throughout the [t]rial, [Tyler] was the target of numerous discovery motions seeking compliance with discovery procedures. [Tyler's] noncompliance with discovery rules does not warrant an award in her favor with regard to delay damages.

-23-

[Tyler] does not recognize that case management delays were stipulated to by both parties in two separate Motions for Extraordinary Relief. This constitutes a delay of trial that cannot be attributed solely to [Hoover]. Under Rule 238(b)(2), this period may not be used to calculate delay damages against [Hoover]. Nonetheless, [Tyler] does not take this into consideration when calculating her delay damages. In fact, it is unclear what basis underlies [Tyler's] formulation for delay damages.

[Tyler's] estimation of delay damages are not properly calculated to reflect the lengthy pre-trial journey of the instant case. [Tyler] calculates the amount of delay damages on a *per diem* rate from July 16, 2020 to November 17, 2021. November 17, 2021, the date the [j]ury successfully found a verdict in favor of [Tyler], is readily ascertainable from the docket. July 16, 2020, the date inputted to determine the start of delay, is not a relevant date in this litigation. This [trial c]ourt assumes [Tyler] intended to cite the date [Hoover] was given service, July 16, 2019. On this standing alone, it would be patently unjust and an abuse of discretion to award a wholly arbitrary amount of delay damages.

[Tyler] has not provided an adequate basis to justify the [t]rial [c]ourt awarding delay damages. [Tyler] has not identified delays attributable to [Hoover], nor has [Tyler] offered a proper calculation of damages to the [trial  c]ourt. In keeping with the [Pennsylvania] Supreme Court's decision in [***Craig v. Magee Memorial Rehab. Ctr.***, 515 A.3d 1350, 1353 (Pa. 1986)], the [trial c]ourt does not believe that the delays in this case were solely attributed to [Hoover]. Contrarily, there was evidence that [Tyler] herself was at fault for the delays.

Trial Court Opinion on Cross-Appeal, 8/19/22, at 6-7.

The trial court misconstrues the law concerning delay damages and its purpose. Under Rule 238, a plaintiff does not have to justify an award of delay damages; the award is **mandatory**. ***See*** Pa.R.C.P. 238(a)(1). Further, the trial court's finding that Tyler's calculation of the damages from July 16, 2020, was "not a relevant date in this litigation," is incorrect. Trial Court Opinion on

-24-

Cross-Appeal, 8/19/22, at 6. Rule 238 provides that delay damages start accruing one year from the date of service of process. Pa.R.C.P. 238(a)(2). Therefore, July 16, 2020, one year from the date of service of process, is the correct date for calculating delay damages under Pa.R.C.P. 238(a)(2).

Lastly, this Court has explained:

Rule 238 seeks to encourage settlement and achieve a prompt disposition of cases so as to unclutter the [c]ourt[s'] dockets. **The Rule also serves to compensate a plaintiff for the delay in receiving funds rightly due to him, but which remain in the defendant's hands during the litigation process**. … [I]n essence, Rule 238 delay damages are an extension of the compensatory damages necessary to make a plaintiff whole.

*Grimm v. Universal Medical Ser., Inc.*, 156 A.3d 1282, 1289 (Pa. Super. 2017) (citations omitted, emphasis added).

Our review discloses no support for the trial court's finding that Tyler "herself was a fault for the delays." Trial Court Opinion on Cross-Appeal, 8/19/22, at 7.

While Hoover filed two motions to compel discovery against Tyler, those motions were filed in 2019, prior to the period when delay damages began to accrue. There is nothing of record demonstrating that the motions delayed the start of trial. Rather, the record indicates that later discovery extensions and trial delay were caused by issues with obtaining discovery from Advanced Diagnostics. *See* Motion for Extraordinary Relief, 7/8/20 at 2 (unnumbered).

As Tyler discusses in her brief, Hoover in 2020 filed two motions for extraordinary relief requesting continuances. Tyler did not oppose the first

motion but opposed the second motion. ***See*** Tyler's Appellant Brief, at 15-16; Motion for Extraordinary Relief, 3/2/20, at 2 (unnumbered); Motion for Extraordinary Relief, 7/8/20 at 2 (unnumbered).

Hoover served discovery requests on Tyler with less than 30 days remaining in discovery and requested some of the relief in the first motion prematurely. ***See*** Tyler's Appellant Brief at 17-18; Case Management Order, 2/10/19, at 1 (unnumbered); Motion for Extraordinary Relief, 3/2/20, at 2 (unnumbered). The second motion sought a continuance based on Covid-19 limitations and the problems Hoover had in obtaining discovery from Advanced Diagnostics. Motion for Extraordinary Relief, 7/8/20 at 2 (unnumbered). Thus, the trial court's finding that Tyler bore some responsibility for these delays is unsupported in the record.

Nonetheless, the Comment to Rule 238 makes clear that discovery delays caused by a plaintiff are not necessarily a basis for reducing, or in this case, declining to award delay damages:

> With respect to delay of the trial, **not every procedural delay is relevant to the issue of delay damages, but only such occurrences as actually cause delay of the trial.** For example, failure by the plaintiff to answer interrogatories within thirty days should not affect the award of damages for delay unless the trial was delayed as a result. Otherwise, the introduction of the fault concept and its attendant hearing would create a large new field of court hearings revolving around evidence of dilatory compliance with discovery procedures, the evidence of which would consist almost entirely of the attorneys testifying against each other and could be years old before the hearing. It is felt that present Rule 4019 provides a vehicle, although little used at present, which can timely dispose of delay due to discovery noncompliance regardless of whether or not it

delays the trial. The note under proposed Rule 238(b)(2) is a reminder of this alternative remedy to halt delay damages and to expedite preparation of the case for trial.

Pa.R.C.P. 238, comment (emphasis added).

Regarding delays caused by the Covid-19 judicial emergency, this Court

recently stated:

Th[e Covid-19] issue requires us to interpret and apply the Supreme Court's Order and [Pa.R.C.P.] 238. Thus, it presents us with a pure question of law. …

Sitting *en banc*, this Court explained the drafters of Rule 238 "**specified two, and only two, periods of time to be excluded from the calculation of delay damages** …." *King v. SEPTA*, 383 Pa. Super. 420, 557 A.2d 11, 12-13 (Pa. Super. 1989) (*en banc*). Those two excluded periods are "(1) any periods of time after which the defendant has made a written offer of settlement, the offer is continued in effect for at least ninety days or until the commencement of trial, whichever first occurs, the offer is rejected by the plaintiff, and the plaintiff does not recover more than 125 percent of the offer; and (2) any periods of time during which the plaintiff caused delay of the trial." *Id.* (quoting *Miller v. Wise Bus. Forms, Inc.*, 381 Pa. Super. 236, 553 A.2d 443, 446 (Pa. Super. 1989)). Thus, we concluded that Rule 238 has "*not* allowed for the exclusion of periods of delay not caused by either party." *Id.* at 13 (emphasis in original).

….

COVID-19 and the judicial emergency it created did not diminish the rights of plaintiffs to be made whole, nor did they prohibit defendants from engaging in settlement negotiations or making reasonable offers to help alleviate court dockets. … [S]imply because the flow of cases had temporarily stopped, it does not follow that all legal practice had also ceased. [The defendant] was free at all times during the judicial emergency to increase its offer to induce the [plaintiffs] to settle and thereby avoid delay damages.

… We do not read the March 18, 2020 Order of the Supreme Court as permitting tortfeasors to reap unjust windfalls from a

-27-

five[-]month delay that was clearly beyond the control of their victims. … [T]he [defendant] must compensate the [plaintiffs] for using their money during the judicial emergency to the fullest extent of Pa.R.C.P. 238.

*Getting v. Mark Sales & Leasing, Inc.*, 274 A.3d 1251, 1261-62 (Pa. Super. 2022) (emphasis omitted and added).

It is undisputed that Hoover did not make any written settlement offer. *See* Trial Court Opinion on Cross-Appeal, 8/19/22, at 5; Tyler's Appellant Brief at 13-14; Hoover's Brief on Cross-Appeal at 5-6 (recounting the procedural history of the case without reference to any settlement negotiations or offers). As discussed above, the record demonstrates Tyler did not request any continuances and trial delays were caused by Hoover's last-minute discovery requests and problems with obtaining discovery from a third party, Advanced Diagnostics. Consistent with our decisions in *Getting* and *Miller*, delays caused by third parties are not attributable to Tyler, and Tyler is entitled to delay damages. *Getting*, *supra* at 1261-62; *Miller*, *supra* at 446. Therefore, we are constrained to reverse the order denying Tyler's motion for delay damages.

In sum, we vacate the trial court's judgment and remand for the trial court to mold the verdict to include delay damages and interest.

Judgment affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2023