J-A05018-22

2022 PA Super 58

HAROLD AND VERONICA GETTING    :    IN THE SUPERIOR COURT OF
                          :             PENNSYLVANIA
                v.                  :
                          :
MARK SALES & LEASING, INC.,      :
D/B/A MARK'S SALES & LEASING   :
AND LEMUEL SCOTT BARGER     :
                          :
        Appellants       :    No. 348 MDA 2021

Appeal from the Judgment Entered February 12, 2021,
in the Court of Common Pleas of Lycoming County,
Civil Division at No(s):  CV-18-1228.

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY KUNSELMAN, J.:              **FILED APRIL 07, 2022**

Mark Sales & Leasing, Inc. and Lemuel Scott Barger (collectively, "the Rental Company") appeal from the judgment entered after a jury awarded Harold and Veronica Getting $2,047,217.51 in damages for personal injuries. Among other issues, the Rental Company claims it should not owe the Gettings delay damages for the length of time that the COVID-19 pandemic shuttered Pennsylvania courts.  Like the trial court, we hold that the Supreme Court of Pennsylvania did not suspend the right of plaintiffs to collect delay damages during the 2020 judicial emergency and affirm.

On September 13, 2017, the Gettings wanted to lease a lawn mower. Upon entering the Rental Company, they met Mr. Barger, a sales associate. The Gettings informed him that their property was steep; they needed a riding mower appropriate for maneuvering up and down hills.

_____

[*] Former Justice specially assigned to the Superior Court.

Mr. Barger recommended a Troy-Built 26J Mini-Rider, and the Gettings rented it. Mr. Barger delivered the mower to the Gettings' home where he saw the lay of the land. After observing the property's slope, he still asserted Mr. Getting could safely use the mower.

Mr. Barger discussed how to operate it and removed the hang-tag from the steering wheel. That hang-tag explained aspects of the mower, including how not to drive it. Mr. Barger neglected to provide an owner's manual, which contained additional warnings for users of the product.

Three days later, Mr. Getting drove the mower. While on a hill, it rolled over and cut off part of Mr. Getting's foot. Despite two surgeries, the injury was permanent. Thereafter, the Gettings found the discarded hang-tag in their garage. They read it for the first time.

Mr. Getting sued the Rental Company on various negligence theories, and Mrs. Getting brought a claim for loss of consortium. The case proceeded to a jury trial, which ran from August 31, 2020 until September 4, 2020 – *i.e.*, during the COVID-19 pandemic.

Hence, the trial court took extensive precautions during jury selection and trial by implementing the following safety measures:

> All individuals entering the building were temperature tested at the entrance of the courthouse; individuals were required to wear both facemasks and face-shields into the building; and the courtroom was arranged so all individuals, including all jurors, [were] spaced to preserve social distancing.

Trial Court Opinion, 2/12/21, at 3.

However, as the trial court noted, the trial did not proceed without incident:

> On the morning of the second day . . . Mark O'Neill, owner and corporate designee of [the Rental Company,] was called to testify. Following the close of his testimony, during the midday lunchbreak, a juror, who had left the courthouse, called the [trial court, because] he had just learned of an indirect exposure to COVID-19. Specifically, this juror provided that he had received notification that his sister-in-law, who had spent several hours in close quarters with the juror's wife the Saturday prior to trial, had just recently been diagnosed with COVID-19. Even though neither the juror nor his wife had been diagnosed with COVID-19 nor reported any symptoms, out of an abundance of caution, the [trial court] dismissed the juror.

*Id.*

After a consultation with the remaining jurors, the court, the jury, and the parties agreed to adjourn for the day, so that court staff could sanitize the courtroom. The following morning, everyone returned to court, except for Mr. O'Neill.

Counsel for the Rental Company approached the trial court in chambers and said:

> I received a telephone call from [Mr. O'Neill] at 7:37 a.m. this morning raising concerns about continuing to participate in the trial under the circumstances and what had occurred yesterday regarding a juror reporting the possible contact with COVID-19.
>
> Apparently, [Mr. O'Neill] went home and talked to his wife. And his concern is he's 73 years old. He's got a heart condition. He's had two stints. He's on heart medication. And, additionally, he indicated that his wife is doing very badly health-wise. She has rheumatoid arthritis that affects

- 3 -

> the tissues and actually had her down to the Mayo Clinic this past summer.
>
> After discussing with his wife, he just thought it's just not worth going in there and risking getting COVID and then bringing it home to his wife. And he doesn't want to continue to participate at this time; although, he would like to be here for the entire trial. And – but under the circumstances, he feels he's got to put safety first, with him and his wife. And for that reason, I would ask the court to declare a mistrial.

N.T., 11/2/20, at 4-5.

The Rental Company did not raise a rule of procedure, a rule of evidence, or any constitutional provision (either state or federal) to support its motion for a mistrial. In fact, only the trial court brought up the issue of whether Mr. O'Neill's rights were in jeopardy. The court said, "it's not accurate to say that, you know, the parties now have a right to decide whether or not they want to participate or not participate. They don't." *Id.* at 9.

Counsel for the Rental Company agreed by saying, "Right." *Id.* Thus, the record reveals the Rental Company conceded that no fundamental right served as the basis for its mistrial motion. Additionally, the Rental Company made no mention of due process.

Instead, the court considered the single theory of relief that the Rental Company had raised: namely, a factual assertion that the court was unsafe for Mr. O'Neill (and, by extension, his wife) due to a possible, thirdhand exposure to COVID-19 through the excused juror. Rejecting that fact-based theory, the trial court reasoned as follows:

the court has taken extraordinary measures to ensure the safety of all its participants. Obviously, the jury, after being told what the circumstances were yesterday, voluntarily and unanimously agreed to return today.

Going back to the jury selection process, we've limited the number of individuals coming into the courtroom. We temperature check everybody who is coming into the building. All of the participants are wearing masks and shields.

Everybody is being socially distanced in the hallways, in the elevators, in the juror's lounge where they're waiting. They are distanced and spread out in the jury box. We have a shield on the witness stand to provide a further measure of health safety.

I don't have any reason to believe that it would be unsafe for Mr. O'Neill or anybody else in court today to be present and participate in these proceedings. In addition to which – and, quite candidly, I imagine that Mr. O'Neill's store has continued to be open under the circumstances, and I have no reason to believe that his store is safe[r] than this courtroom. In fact, it's quite likely that he is not taking the measures that this court has taken to assure his health and safety. And so, your request for a mistrial is denied.

*Id.* at 5-6.

Trial resumed, and additional witnesses testified. The jury found the Rental Company was 85% liable and Mr. Getting was 15% liable. It imposed damages, which the court molded to account for Mr. Getting's comparative negligence.

The Rental Company sought post-trial relief. Regarding its motion for a mistrial, it raised a rule of procedure, a rule of evidence, and various constitutional provisions (including a due-process argument) for the first time. *See* Rental Company's Post-Trial Brief at 19-21. It also claimed, among other

things, that the verdict was against the weight of the evidence, and that the court should have given the jury an additional instruction on the scope of the Rental Company's duty. The trial court denied the motion in all respects.

Also, the Gettings sought delay damages. The Rental Company argued that the time during which Pennsylvania courts were closed due to COVID-19 should not count towards those damages. The court disagreed, awarded delay damages in the amount the Gettings had requested, and entered judgment in favor of the Gettings. This timely appeal followed.

The Rental Company raises four issues. They are:

1. Whether a new trial is required, because a mistrial or other appropriate relief should have been granted when [Mr. O'Neill] stopped attending trial after a juror reported a COVID exposure?

2. Whether a new trial is required, because the jury's findings that [the Rental Company was] negligent and that [Mr. Getting] was only 15% comparatively negligent were against the weight of the evidence?

3. Whether a new trial is required, because the jury should have been instructed that [the Rental Company] had no duty to ensure that [Mr. Getting] read, understood, and followed the mower's manual?

4. Whether it was error to award delay damages for the period of the judicial emergency declared by [the Supreme Court of Pennsylvania] and the [trial court's President Judge]?

Rental Company's Brief at 4. We address the first issue on its own, the second and third issues together, and then the fourth issue.

## 1. *Waiver of Mistrial Theories*

First, the Rental Company argues the trial court should have declared a mistrial, as a matter of law, under Pennsylvania Rule of Evidence 615(b), the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, and Article I, §§ 6 and 11 of the Constitution of the Commonwealth of Pennsylvania. ***See id.*** at 23-29. The Rental Company also heavily relies upon criminal cases from this Commonwealth regarding the right of those accused of crimes to confront witnesses against them. Thus, although it never directly says so, the Rental Company implies that this Court should import Pennsylvania Rule of Criminal Procedure 602(a) and the Confrontation Clauses of the Sixth Amendment and Article I, § 9 into civil cases.

In response, the Gettings correctly observe that the Rental Company "did not assert a constitutional challenge when seeking a mistrial. This argument did not emerge until the post-trial motion." Gettings Brief at 37. Therefore, the Gettings contend the Rental Company is "not entitled to appellate relief based on a waived constitutional argument . . . ." ***Id.*** We agree.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." ***Trigg v. Children's Hosp. of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. 2020).

Under Pennsylvania Rule of Civil Procedure 227.1, "post-trial relief may not be granted unless the grounds therefor, if then available, were raised in . . . [a] request for . . . conclusions of law . . . at trial." This Rule is based

- 7 -

upon the waiver principle found in **Dilliplaine v. Lehigh Valley Trust Co.**, 322 A.2d 114 (Pa. 1974) (holding that basic and fundamental error is not a ground for a new trial unless the grounds for post-trial relief are asserted prior to or during trial). "A ground for a new trial . . . may not be raised for the first time in the Motion for Post-Trial Relief. It must be raised timely in pre-trial proceedings or during the trial, thus affording the court the opportunity to correct the error." Pa.R.C.P. 227.1, Explanatory Comment--1983.

The Supreme Court of Pennsylvania recently emphasized that a party who asserts a new legal theory for relief in a post-trial motion has waived that theory and is not entitled to relief. **See Trigg**, **supra**. In that case, the parties selected a jury using the local process of questioning potential jurors before a court clerk, rather than a judge. Under this process, when a dispute arose over a potential juror's fitness, the parties and the clerk would walk the juror from the jury-selection room to a courtroom, where a judge would review the transcript of the potential juror's testimony, reenact the original questioning with the juror, or some combination of the two.

When the Triggs challenged three jurors, the parties, the clerk, and the challenged jurors went to see the judge. The Triggs' attorney told the judge that reading the transcript would be the quickest way to dispose of the challenges. Thus, the judge read the transcript, heard argument, and denied the motion to strike the jurors for cause.

Following a defense verdict, the Triggs renewed their challenges to the three jurors in their motion for post-trial relief. However, they asserted

procedural and constitutional theories that they did not mention during *voir dire*. The Triggs argued that the judge could not observe the demeanor or tenor of the challenged jurors' answers, which deprived "litigants in [the county] of the same Constitutional rights of litigants in all other counties where a judge can assess demeanor and tenor" of potential jurors. *Id.* at 265. The trial court denied relief, and plaintiffs appealed.

Ultimately, the Supreme Court of Pennsylvania found waiver. The High Court explained that the Triggs waived any theory based on the judge's absence from *voir dire*. First, the Triggs never made a specific objection based upon the judge's absence from jury selection. Second, the Triggs' challenges for cause were based solely upon on the substance of the answers of the jurors, rather than any constitutional right to have a judge observe *voir dire* or other procedural theories. *See id.* at 269.

Of particular importance here, even though the Triggs "alleged, in post-trial motions, that the trial court erred in not striking [a] juror for-cause, because the trial court did not have the opportunity to observe the demeanor and tenor of her answers," the Supreme Court concluded this procedure did not preserve the issue for review. *Id.* at 270. The Triggs "failed to raise with the trial judge **any issue** relating to his lack of observation of this juror's demeanor in answering *voir dire* questions . . . ." *Id.* (emphasis added). Hence, although they preserved the challenges for causes under Pa.R.C.P. 227.1 by objecting during *voir dire*, the issues and legal theories that the Triggs advanced in their post-trial brief were not preserved. Because the

Triggs "gave their express assent to having the trial court resolve their for-cause challenges solely on the basis of the transcript of the *voir dire* process, they [had] waived for appellate review any challenge to the use of this methodology." *Id.* at 271.

Like the Triggs, the Rental Company failed to assert any procedural or constitutional theory to support its motion for mistrial until it filed its post-trial brief. As explained above, no legal theories served as the basis for the Rental Company's motion for a mistrial at the time of trial. In fact, when the trial court stated that no one had a fundamental right to excuse or not to excuse themselves from the trial, counsel for the Rental Company conceded the point. *See* N.T., 11/2/20, at 11. Rather than arguing that the risk of COVID-19 in the courtroom jeopardized a fundamental right of his corporate client or of Mr. O'Neill, the Rental Company's attorney agreed that no such rights were in peril. Also, the Rental Company raised no rule of evidence or procedure to argue its motion for a mistrial. *See id.* at 4-5.

Thus, under *Trigg* and Pa.R.C.P. 227.1(b)(1), the Rental Company has waived any argument that the trial court erred, as matter of law, under the rules of evidence, the rules of criminal procedure, and the constitutions.[1]

_____

[1] We note that the Rental Company also states, "At a minimum, the [trial] court should have evaluated the veracity of Mr. O'Neill's reasons for departing and informed the jury of the legitimate health conditions that prompted it." Rental Company's Brief at 30. The Rental Company fails to develop this theory any further. Thus, we dismiss its challenge to the instruction on Mr. O'Neill's absence as waived. *See*, *e.g.*, *Lackner v. Glosser*, 892 A.2d 21 (Pa. Super.
*(Footnote Continued Next Page)*

**2.** ***Weight of the Evidence & Jury Instructions***

For its second and third issues, the Rental Company claims that the trial court erred when it (1) ruled that the verdict was against the weight of the evidence and (2) refused to give a jury instruction that the Rental Company had requested. However, the Rental Company miscomprehends – and, thus, misapplies – our standard of review for both issues.

The Rental Company begins its brief by correctly acknowledging that we review such matters for an abuse of discretion. ***See*** Rental Company's Brief at 1-2 (citing ***Grove v. Port Authority***, 218 A.3d 877, 887 (Pa. 2019), and ***James v. Albert Einstein Med. Ctr.***, 170 A.3d 1156, 1163 (Pa. Super. 2017)). However, it neglects to define what constitutes an abuse of discretion or indicate which type of abuse the trial court allegedly committed.

Abuse of discretion may take one of three forms. An abuse of discretion occurs only where "the trial court renders a judgment that is [(1)] manifestly unreasonable, arbitrary, or capricious; or [(2)] fails to apply the law; or [(3)]

_____

2006) (explaining that arguments must adhere to the Rules of Appellate Procedure and underdeveloped arguments are waived on appeal); ***Estate of Haiko v. McGinley***, 799 A.2d 155 (Pa. Super. 2002) (stating that absent reasoned discussion of the law in an appellate brief, this Court's ability to provide meaningful review is hampered, necessitating waiver on appeal).

Furthermore, the Rental Company also claims that opposing counsel's closing argument prejudiced it. This sub-issue is now moot. This sub-issue alleges that the trial court's denial of the mistrial or its jury instruction on Mr. O'Neill's absence were harmful errors. Having dismissed both theories as waived, we need not undertake a harmless-error review.

was motivated by partiality, prejudice, bias, or ill will." *Ambrogi v. Reber*, 932 A.2d 969, 974 (Pa. Super. 2007).

Rather than explaining which abuse that it thinks occurred and why, the Rental Company argues that the trial court should have found the verdict to be against the weight of the evidence, and that the court should have given the requested jury instruction. Hence, the arguments are presented as if our standard of review were *de novo*.

Regarding the weight-of-the-evidence claim, the Rental Company contends "the manifested weight of the evidence required the jury to find that [Mr. Getting] was the sole cause of the accident or, at a bare minimum, far more than 15% at fault." Rental Company Brief at 40. It asserts the jury's decision to credit Mr. Getting's theories of liablity were against the weight of the evidence. *See id.* at 47. Thus, the Rental Company believes "the trial court *should not have* relied on the [owner's] manual to defend the jury's apportionment of causal fault." *Id.* at 50 (emphasis added).

Even if we thought the trial court "should not have" found the verdict to be within the realm of possibility when weighing the evidence and testimony that it observed, we have long held that an "abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment." *Johnson v. Johnson*, 222 A.3d 787, 789 (Pa. Super. 2019). Thus, it is insufficient to convince an appellate court that "the lower tribunal reached a decision contrary to the decision that the appellate court would have reached." *B.B. v. Dep't of Pub. Welfare*, 118

A.3d 482, 485 (Pa. Cmwlth. 2015) (some punctuation omitted). In other words, when we review for abuse of discretion, it is not our role to second guess what the trial court should or should not have decided on a particular issue. Instead, the appellant must demonstrate one of the three abuses described above. *See Ambrogi*, *supra*.

As such, the issue is not whether the verdict shocks the conscience of this Court, but rather, whether the trial court's decision that the verdict did not shock *its* conscience was manifestly unreasonable. A weight-of-the-evidence claim "derives from the fact that the trial court, like the jury, had an opportunity to hear the evidence and observe the demeanor of the witnesses; the hope and expectation animating a weight challenge is that *the trial court* will conclude that the verdict was so contrary to what it heard and observed that *it* will deem the jury's verdict such a miscarriage of justice as to trigger the court's time-honored and inherent power to take corrective action." *Criswell v. King*, 834 A.2d 505, 512 (Pa. 2003) (emphasis added).

Thus, we review the trial court's:

> exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses . . . In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight-of-the-evidence claim is the least assailable of its rulings.

*Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011).

The Rental Company's brief is devoid of any argument regarding how or why the trial court's decision that the verdict did not shock the conscience of **that court** was an abuse of discretion. Thus, the Rental Company fails to persuade us that the trial court abused its discretion when it rejected the weight-of-the-evidence claim.

The argument of the Rental Company concerning its requested jury instruction fairs no better. The Rental Company does not even allege that an abuse of discretion occurred when the court rejected its request, much less explain which type of abuse the trial court supposedly committed and why.

Instead, the Rental Company asserts that "the jury should have been instructed that [the Rental Company] had no duty to ensure that [the Gettings] read, understood, and followed the mower's manual." Rental Company's Brief at 51. It then proceeds to relitigate the jury-instruction issue *de novo*. This is not the appropriate standard of review for such a claim. **See James**, **supra**. Accordingly, we are unpersuaded that the trial court abused its discretion when instructing the jury.

Because the Rental Company has not addressed our standard of review in its appellate arguments for either of the above issues, neither issue affords it relief.

### 3. *Delay Damages During COVID-19 Pandemic*

Finally, the Rental Company alleges that the trial court erred, as a matter of law, when it imposed delay damages under Pennsylvania Rule of

Civil Procedure 238. According to the Rental Company, "delay damages may not be imposed during the period of judicial emergency declared by the Supreme Court [of Pennsylvania] on March 16, 2020 and extended by the Court of Common Pleas of Lycoming County until trial." Rental Company's Brief at 56.

Two days after the Supreme Court declared the emergency, it issued an order that serves as the basis for the Rental Company's claim. That March 18, 2020 Order closed the courts of this Commonwealth, suspended jury trials, and continued or postponed all calendared events on the judicial dockets throughout Pennsylvania. The Order provided, "Unless otherwise indicated herein, all time calculations for purposes of time computation relevant to court cases or other judicial business, as well as time deadlines, are SUSPENDED" through the end of the judicial emergency. **In re: General Statewide Judicial Emergency**, March 18, 2020 Order at 4, Nos. 531 & 532 JAD (Pa. 2020).

The Rental Company contends that that Order suspended the time for calculating delay damages under Pa.R.C.P. 238. In its view, that suspension lasted from the beginning of the judicial emergency on March 16, 2020 through the commencement of the jury trial on August 31, 2020.

This issue requires us to interpret and apply the Supreme Court's Order and Rule 238. Thus, it presents us with a pure question of law. "As with all questions of law, the appellate standard of review is *de novo*, and the

appellate scope of review is plenary." ***In re Wilson***, 879 A.2d 199, 218 (Pa. Super. 2005).

Sitting *en banc*, this Court explained the drafters of Rule 238 "specified two, and only two, periods of time to be excluded from the calculation of delay damages . . . ." ***King v. SEPTA***, 557 A.2d 11, 12–13 (Pa. Super. 1989) (*en banc*). Those two excluded periods are "(1) any periods of time after which the defendant has made a written offer of settlement, the offer is continued in effect for at least ninety days or until the commencement of trial, whichever first occurs, the offer is rejected by the plaintiff, and the plaintiff does not recover more than 125 percent of the offer; and (2) any periods of time during which the plaintiff caused delay of the trial." ***Id.*** (quoting ***Miller v. Wise Bus. Forms, Inc.***, 553 A.2d 443, 446 (Pa. Super. 1989)). Thus, we concluded that Rule 238 has "***not*** allowed for the exclusion of periods of delay not caused by either party." ***Id.*** at 13 (emphasis in original).

Here, as in ***King***, the Rental Company does not contend that it made an adequate settlement offer under Pa.R.C.P. 238 or that the Gettings caused any delays in this case. Thus, the procedural posture of this case falls squarely within the ambit of Rule 238 and the precedents of this Court applying it.

While Pa.R.C.P. 238 admittedly involves time calculations, calculating time is not the purpose of the Rule. The Rule's reliance upon time is merely a product of the fact that interest accrues as a factor of time. Although the Rule impacts and seeks to increase the speed at which cases in our civil system proceed, the Rule is not one of filing deadlines or of simple procedure. ***See***

*Laudenberger v. Port Auth. of Allegheny Cty.*, 436 A.2d 147, 151 (Pa. 1981) (holding that the "basic aim of [Rule 238] is to alleviate delay in the disposition of cases, thereby lessening congestion in the courts.")

Instead, the Rule codifies the common-law right of plaintiffs to be fully compensated for harm that tortfeasors have inflicted upon them. *See Marrazzo v. Scranton Nehi Bottling Co.*, 263 A.2d 336, 337 (Pa. 1970). Thus, the Supreme Court has held, "Although the award for delay of time may be 'in the nature of interest,' in reality, it is merely an extension of the compensatory damages necessary to make a plaintiff whole." *Laudenberger*, 436 A.3d at 154.

COVID-19 and the judicial emergency it created did not diminish the rights of plaintiffs to be made whole, nor did they prohibit defendants from engaging in settlement negotiations or making reasonable offers to help alleviate court dockets. In fact, the Rental Company and the Gettings engaged in settlement talks *during the judicial emergency*. Thus, simply because the flow of cases had temporary stopped, it does not follow that all legal practice had also ceased. The Rental Company was free at all times during the judicial emergency to increase its offer to induce the Gettings to settle and thereby to avoid delay damages.

Moreover, the interest on the damages was the plaintiffs' money by right, by virtue of the jury's verdict and the common-law rule of *Marrazzo*, *supra*. We do not read the March 18, 2020 Order of the Supreme Court as permitting tortfeasors to reap unjust windfalls from a five month delay that

was clearly beyond the control of their victims. Here, closure of the Court of Common Pleas of Lycoming County did not alter the indisputable fact that the Rental Company retained and had unfettered use of the Gettings' money throughout the judicial emergency. As such, the Rental Company must compensate the Gettings for using their money during the judicial emergency to the fullest extent of Pa.R.C.P. 238.

In short, we agree with the trial court that delay damages under Rule 238 continued to run during the 2020 judicial emergency. Thus, the Rental Company's fourth appellate issue is meritless.

Judgment affirmed.

Judge Olson concurs in the result.

President Judge Emeritus Stevens joins the Opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/7/2022