J-A11033-25

2025 PA Super 153

MARY HEFFELFINGER : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LINDA SHEN, DDS, SHEN SMILES, :
PC AND DRUMS DENTAL LAB, LLC :
:
: No. 681 MDA 2024
Appellants :

Appeal from the Judgment Entered April 30, 2024
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
202008443

BEFORE:   MURRAY, J., KING, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:            **FILED: JULY 21, 2025**

Linda Shen, DDS ("Dr. Shen"), Shen Smiles, PC, and Drums Dental Lab, LLC, appeal from the April 30, 2024 judgment entered on the jury verdict in favor of Appellee, Mary Heffelfinger, and jointly against Appellants, in the total amount of $11,459,513.69.  After careful review, we affirm.

The relevant factual history of this case, as gleaned from the certified record, is as follows:  Appellee is a 68 year-old woman who resides in Chester County, Pennsylvania.   Dr. Shen is licensed to practice dentistry in the Commonwealth of Pennsylvania and is the sole owner of her professional corporation, Shen Smiles, PC ("Shen Smiles") in Drums, Pennsylvania. Appellee had known Dr. Shen for over a decade when she became her patient

---

[*] Former Justice specially assigned to the Superior Court.

in 2013. On May 13, 2018, Appellee went to Dr. Shen for dental care with a lesion present on the left side of her tongue. Throughout more than six visits in 2018, each initiated by Appellee, the lesion continued to grow and worsen. In each instance, Dr. Shen prescribed palliative treatment but failed to refer Appellee for specialist care, perform an oral cancer screening or biopsy for diagnosis of the lesion, nor schedule Appellee for follow-up visits. In December of 2018, Dr. Shen's then-assistant, Dora Comstock, looked for the first time at Appellee's sore, and was immediately alarmed. When she raised her concern with Dr. Shen, Dr. Shen responded in a hostile manner and told Comstock to stay silent. Nevertheless, Comstock instructed Appellee to immediately go to an oral surgeon. Appellee visited an oral surgeon, Niral Parikh, DDS, on December 28, 2018, who immediately recognized the lesion as possible squamous cell carcinoma, and referred Appellee for a biopsy, which confirmed the cancer diagnosis.

Appellee underwent treatment for squamous cell carcinoma from January thru June of 2019. The resulting extensive, invasive treatment caused permanent injury to Appellee. Appellee underwent radiation and chemotherapy, and required dissection of her neck to remove the left side of her tongue and several lymph nodes. Said surgery also required a skin and blood vessel graft, taken from Appellee's arm, which restored some functionality to her tongue. Although Appellee was able to achieve remission,

she suffered permanent injury including speech deficits, lymphedema, scarring, and a continued risk of recurrence.

The trial court set forth the early procedural history of this case as follows:

> This matter was commenced by writ of summons dated September 15, 2020. Pre-complaint discovery was conducted, and [Appellee's] complaint was filed on August 17, 2021. A series of preliminary objections and amended complaints ensured. [Appellee's] third amended complaint was filed November 9, 2021. Following disposition of [Appellee's] preliminary objections to [Appellants'] preliminary objections to [Appellee's] third amended complaint, [Appellee's] third amended complaint became the operative complaint in this matter. The complaint alleged negligence against all [Appellants], as well as intentional infliction of emotional distress against [Dr. Shen]. The cause of action for intentional infliction of emotional distress was subsequently withdrawn at trial. Punitive damages were sought pursuant to the negligence claim.

Trial court opinion, 8/23/24 at 1-2 (extraneous capitalization omitted).

On February 20, 2024, the parties proceeded to a jury trial before the Honorable Richard M. Hughes, III. At trial, the jury heard testimony from eight witnesses, including a number of experts. Appellee presented, ***inter alia***, the expert testimony of George Just, DDS, DMD, to opine of the standard of care for general dentistry, as well as the expert testimony of Dr. Wayne Koch, MD, to opine on the causation of Appellee's injuries and the alternative treatment that would have been required with a timely diagnosis. Appellants

- 3 -

presented, *inter alia*, Christopher Bereznak, DMD as an expert in general dentistry as well as Dr. Shen as a fact witness.

At trial, the parties also contested whether Dr. Shen had in fact seen Appellee as a patient during the seven-month period between May and December of 2018. Dr. Shen's patient ledger did not reflect any appointments with Appellee during this timeframe, and Dr. Shen failed to maintain any medical records relative to Appellee. As a result, the trial court admitted testimony from Appellee's sister, Catherine Martin, Dr. Shen's former officer manager from 2013 to 2019. Martin testified that Dr. Shen regularly took patients 'off-the-books' and received payments in unrecorded cash amounts, or in-kind services, which would therefore not have been reflected in her patient's ledger. Additionally, the trial court admitted testimony that Dr. Shen herself was responsible for the medical records relevant to the Appellee during that time frame the records went missing. *See* notes of testimony, 2/20-22/24 at 75, 82-84, 174, 183-184.

Following a three-day trial, the jury returned a verdict in favor of Appellee in the total amount of $11 million. Specifically, the jury found Dr. Shen negligent and awarded Appellee $3 million in compensatory damages; the jury also found Dr. Shen's reckless conduct warranted $8 million in punitive damages. Jury Verdict Slip, 2/23/24 at 1-3. On February 26, 2024, Appellee filed a motion for $459,513.69 in delay damages pursuant to Pennsylvania Rule of Civil Procedure 238. Thereafter, on March 4, 2024,

Appellants filed motions for post-trial relief, which were denied by the trial court on April 11, 2024. On April 23, 2024, the trial court granted Appellee's motion for delay damages in the amount of $459,513.69. On April 30, 2024, judgment was subsequently entered in favor of Appellee, and jointly against Appellants, in the total amount of $11,459,513.69. This timely appeal followed on May 9, 2024.[1]

Appellants raise the following 14 issues for our review:

1. Whether the evidence was sufficient to warrant an award of punitive damages when the evidence showed nothing more than negligence on the part of Appellant Dentist?

2. Whether the [trial] court erred in allowing the jury to decide if punitive damages should be imposed on [Appellant] Dentist?

3. Whether punitive damages may be awarded for misconduct that constitutes ordinary negligence[?]

4. Whether the trial court committed plain error or abused its discretion in [*sic*]?

5. Whether there is a recognized cause of action for negligent record documentation in Pennsylvania[?]

6. Whether the [trial] court erred in denying [Appellants'] motion *in limine*, seeking to limit certain irrelevant and prejudicial testimony. This permitted [Appellee's] witness (her sister, Catherin Martin) to testify that she had counted $500,00[0.00]-$600,000.00 in cash with [Appellant Dentist], thereby prejudicing the jury

_____

[1] Appellants and the trial court have complied with Pa.R.A.P. 1925.

- 5 -

as to its findings of the awarding of both punitive and non-economic damages?

7. Whether the [trial] court erred in denying [Appellants'] motion *in limine* to exclude improper character evidence?

8. Whether the [trial] court erred in denying [Appellants'] motion *in limine* to prevent [Appellee] from presenting evidence of [Appellants'] failure to produce or maintain an office chart documenting [Appellee's] examination[?]

9. Whether the punitive and non-economic damages awarded were excessive[?]

10. Whether the delay damages awarded by the [trial] court were excessive[?]

11. Whether the trial court erred in denying [Appellants'] preliminary objections and motion *in limine* asserting [Appellee] is barred by the Statute of Limitations from prosecuting a cause of action based upon conduct more than two (2) years prior to the filing of a writ of summons[?]

12. Whether the [trial] court erred in denying [Appellants'] motion *in limine* to bar [Appellee's] admission into evidence of an unsigned release[?]

13. Whether the [trial] court erred in denying [Appellants'] motion for a comparative negligence jury instruction[?]

14. Whether the [trial] court erred in denying [Appellants'] motions for new trial, to set aside the verdict and/or for judgment notwithstanding the verdict[("JNOV")?]

Appellants' brief at 4-6 (numeration added; extraneous capitalization and internal quotation marks omitted).

Preliminarily, we note with disapproval that the 14 allegations of error Appellants present in their "Statement of Questions Involved" do not fully align with the claims Appellants present in the "Argument" section of their appellate brief. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"); *see also* Appellants brief at 14-44. Accordingly, Appellants' claims will be addressed in a slightly different order than presented in their "Statement of Questions Involved," and some of these claims will be addressed concurrently.

## I. Post-Trial Motions for JNOV and To Set Aside the Verdict

We begin by addressing Appellants' claim that the trial court abused its discretion in denying their post-trial motions for JNOV and to set aside the verdict. In support of their contention, Appellants aver that "the jury's finding was against the evidence presented at the time of trial" and that Appellee failed to present sufficient evidence to permit the jury to deliberate on whether punitive damages were warranted in this matter. Appellants' brief at 41-44; *see also* Appellants' Motions for Post-Trial Relief, 3/4/24 at ¶¶ 3, 47-53.

"When reviewing a motion to set aside a verdict, or motion for [JNOV], we must determine whether there is sufficient competent evidence to sustain the verdict." *Majczyk v. Oesch*, 789 A.2d 717, 720 (Pa.Super. 2001) (citation omitted).

> Our standard of review of an order denying JNOV is whether, viewing the record in the light most favorable to the verdict winner and granting the

benefit of every favorable inference, there is sufficient competent evidence to support the verdict. Any conflict in the evidence is resolved in the verdict winner's favor. JNOV may be granted only in clear cases where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. We will disturb a trial court's grant or denial of JNOV only for an abuse of discretion or an error of law.

*Ruff v. York Hospital*, 257 A.3d 43, 48–49 (Pa.Super. 2021) (citations and internal quotation marks omitted), *appeal denied*, 266 A.3d 1064 (Pa. 2021).

"If any basis exists upon which the jury could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case." *Egan v. USI Mid-Atl., Inc.*, 92 A.3d 1, 20 (Pa.Super. 2014) (citation omitted).

Instantly, our review of the record reveals that Appellants' claims merit no relief. As the trial court emphasized in its opinion, in rendering its verdict in favor of Appellee, there was ample evidence for the jury to conclude that Dr. Shen was both negligent and reckless in her care of Appellee:

Expert testimony presented at trial showed that the care provided by Dr. Shen fell well below the standard of care that requires referring an oral lesion within two weeks of observation without improvement. Additional expert testimony showed that, had the cancer been timely diagnosed, none of the debilitating treatment that [Appellee] required would have been necessary. According to the testimony, a diagnosis within the standard of care would have required a wide local excision of the lesion, causing no permanent injury or disfigurement as had ultimately occurred. Fact witnesses painted a picture of reckless

- 8 -

indifference, deceit, and knowing disregard of the risk [Appellee's] oral lesion presented. Dr. Shen's testimony was often conflicting and provided little reprieve form the allegations being levied against her.

Trial court opinion, 8/23/24 at 2-3.

Accordingly, as there exists a basis upon which the jury could have rendered its verdict, the entry of JNOV was clearly not warranted in this matter. *See Egan*, 92 A.3d at 20. Appellants' claim to the contrary must fail.

## II. Evidentiary Rulings

Appellants next several claims challenge the trial court's denial of their post-trial motions for a new trial based upon alleged errors that the trial court made in its evidentiary rulings.

> [O]ur standard of review when faced with an appeal from the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion. In examining the evidence in the light most favorable to the verdict winner, to reverse the trial court, we must conclude that the verdict would change if another trial were granted. Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining parties. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment….
>
> Moreover, the admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.

***Blumer v. Ford Motor Co.***, 20 A.3d 1222, 1226 (Pa.Super. 2011) (citation omitted), ***appeal denied***, 49 A.3d 441 (Pa. 2012).

Specifically, Appellants argue that the trial court erred in allowing Appellee to elicit improper character evidence at trial, including testimony from Dr. Shen's former office manager Catherine Martin that she had assisted Dr. Shen in counting a garbage bag full of approximately $500,000.00 to $600,000.00 in cash. Appellants' brief 16-18. We find that Appellants' failure to lodge an objection to this testimony during trial renders this issue waived on appeal. ***See*** notes of testimony, 2/20-22/24 at 78, 182-183; ***see also Thorson v. EDDW, LLC***, 309 A.3d 141, 148 (Pa.Super. 2024) ("[i]n order to preserve an issue for appeal, a litigant must make a timely, specific objection at trial[.]"), ***appeal denied***, 327 A.3d 611 (Pa. 2024); Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Appellants further argue that the trial court erred in allowing Appellee to elicit testimony from Dr. Shen during cross-examination regarding her failure to keep or maintain a patient ledger or dental records documenting Appellee's care from May to December of 2018. Appellants' brief at 22-27. We find that Appellants' failure to lodge a timely objection to this line of questioning also renders this issue waived on appeal. ***See*** notes of testimony, 2/20-22/24 at 79-83; ***see also Thorson***, 309 A.3d at 148; Pa.R.A.P. 302(a).

Appellants next argue that the trial court erred in allowing Appellee to introduce evidence that Dr. Shen had purportedly conditioned the partial return of Appellee's dental records on her signing a "Waiver of Liability and Hold Harmless Agreement" that was attached to a cover letter containing Dr. Shen's name, mailing address and signature stamp. Appellants' brief at 37-38; *see also* Appellee's Exhibit P-4.

Upon review, we find that Appellants have waived this claim for failure to develop their argument. It is well settled in this Commonwealth that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Banfield v. Cortés*, 110 A.3d 155, 168 n.11 (Pa. 2015) (citation omitted).

In their brief, Appellants set forth the conclusory statement that "[t]he authenticity of the document was in question, it was not signed by [Appellee], … and the entry of the evidence prejudiced the jury against [Appellants]." Appellants' brief at 37. Appellants make no argument, with reference to the certified record, as to why the document was not authentic, nor do they cite a single case, boilerplate or otherwise, in support of their claim. *See id.* at 37-38. Accordingly, Appellants' claim is waived for being underdeveloped.

## III. Delay Damages

Appellants next argue that the $459,513.69 in delay damages awarded by the trial court were excessive and should be denied or reduced, especially

in light of the statewide judicial emergency that resulted from the COVID-19 pandemic. Appellants' brief at 31-33. For the following reasons, we disagree.

"Our standard of review in assessing whether a trial court erred in calculating delay damages is well-settled. We will not reverse a trial court's decision to impose delay damages absent an abuse of discretion." **_Sopko v. Murray_**, 947 A.2d 1256, 1258 (Pa.Super. 2008) (citation omitted).

Pennsylvania Rule of Civil Procedure 238 governs delay damages for actions for bodily injury or death and provides, in relevant part, as follows:

> (a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial … and shall become part of the verdict, decision or award.
>
> (2) Damages for delay shall be awarded for the period of time from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision.
>
> (3) Damages for delay shall be calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus one percent, not compounded.
>
> (b)(1) The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any,
>
>> (i) after the defendant made a written offer which complied with the requirements of subdivision (b)(2), provided that the plaintiff

> obtained a recovery which did not exceed the amount described in subdivision (b)(3), or
>
> (ii) during which the plaintiff caused delay of the trial.

Pa.R.C.P. 238(a), (b).

"The purpose of Rule 238 is to alleviate delay in the courts by providing an incentive and encouragement for defendants to settle meritorious claims as soon as reasonably possible." **Sopko**, 947 A.2d at 1258 (citation omitted). "[A] defendant bears the burden of proof when opposing imposition of delay damages and may do so on two bases: (1) establishing that the requisite offer has been made in accordance with the terms of Pa.R.C.P. 238(b)(1)(i); or (2) establishing that the plaintiff was responsible for specified periods of delay." **Shay v. Flight C Helicopter Services, Inc.**, 822 A.2d 1, 20–21 (Pa.Super. 2003) (citation omitted).

Instantly, our review of Appellants' brief reveals that they have made nothing more than a cursory attempt to demonstrate that they satisfied their burden of proof opposing the trial court's imposition of delay damages under Rule 238. Appellants cite no evidence that Dr. Shen made a written settlement offer to Appellee, and have failed to include any citation to the record in support of their bald contention that "[Appellee] was responsible for delays in the trial, including cancelled depositions, late discovery answers, and express requests a (sic) continuance of the trial." **See** Appellants' brief at 31-33. As such, Appellants' claim merits no relief. **See Coulter v. Ramsden**,

94 A.3d 1080, 1088 (Pa.Super. 2014) ("We need not reach the merits of this issue because the argument section of Appellant's brief merely consists of general statements unsupported by any discussion and analysis of relevant legal authority."), **appeal denied**, 110 A.3d 998 (Pa. 2014); **In re R.D.**, 44 A.3d 657, 674 (Pa.Super. 2012) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities.") (citation omitted), **appeal denied**, 56 A.3d 398 (Pa. 2012).

Moreover, we are unpersuaded by Appellants' claim that the trial court erred in granting delay damages that purportedly encompassed the COVID-19 judicial emergency period between March 31 and August 31, 2020. As recognized by the trial court,

> The law does not allow, nor did [Appellee] request, any damages to be calculated throughout those portions of 2020. Original process was served on September 21, 2020, and [Appellee] requested delay damages calculated to run from September 21, 2021 to the day of the verdict on February 22, 2024. As such, this Court granted [Appellee's] Motion and added the calculated delay damages of $459,513.69 to the jury's verdict.

Trial court opinion, 8/23/24 at 22.

This Court addressed the impact of the COVID judicial emergency on delay damages in **Getting v. Mark Sales & Leasing, Inc.**, 274 A.3d 1251 (Pa.Super. 2022), reasoning as follows:

> COVID-19 and the judicial emergency it created did not diminish the rights of plaintiffs to be made whole, nor did they prohibit defendants from engaging in settlement negotiations or making reasonable offers to help alleviate court dockets. ... [S]imply because the flow of cases had temporary stopped, it does not follow that all legal practice had also ceased.
>
> . . . .
>
> We do not read the March 18, 2020 Order of the Supreme Court [declaring a judicial emergency in the Commonwealth] as permitting tortfeasors to reap unjust windfalls from a five[-]month delay that was clearly beyond the control of their victims. ... [T]he [defendant] must compensate the [plaintiffs] for using their money during the judicial emergency to the fullest extent of Pa.R.C.P. 238.

***Getting***, 274 A.3d at 1261-1262 (emphasis omitted). Based on the foregoing, Appellants' challenge to the award of delay damages warrants no relief.

## IV. Statute of Limitations

Appellants next argue that the trial court erred in failing to find that Appellee's negligence claim was barred by the statute of limitations. Appellants' brief at 34-36.

"In Pennsylvania, a cause of action for negligence is controlled by the two-year statute of limitations set forth in 42 Pa.C.S.[A.] § 5524(2)." ***Kelly v. Carman Corp.***, 229 A.3d 634, 647 (Pa.Super. 2020) (citation and footnote omitted; internal citation formatting amended).

Instantly, the record reflects that Appellants abandoned their statute of limitations defense at trial by failing either to secure a trial court ruling or a jury finding on that defense. Specifically, at the February 20, 2024 hearing on pre-trial motions, Appellants withdrew their motion *in limine* asserting that Appellee's claim was barred by the statute of limitations. *See* notes of testimony, 2/20/24 at 2. At trial, Appellants never pursued a statute of limitations defense, and never moved for nonsuit or a directed verdict on the statute of limitations. *See* notes of testimony, 2/20-22/24 at 303-307. Accordingly, we agree with the trial court that this claim is waived.

## V. Comparative Negligence Jury Instruction

Appellants next argue that the trial court erred in failing to instruct the jury on comparative negligence. Appellants' brief at 38-41.

> Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. Error in a charge occurs when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Conversely, a jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations.

*James v. Albert Einstein Med. Ctr.*, 170 A.3d 1156, 1163–1164 (Pa.Super. 2017) (citation omitted).

Instantly, the record reflects that Appellants agreed that the charge and jury slip, which did not include any mention of comparative negligence, were

- 16 -

"satisfactory," and did not object to the court's jury instructions on this basis. *See* notes of testimony, 2/20-22/24 at 358, 372-373, 407. It is well settled in this Commonwealth that "an appellant must make a timely and specific objection to a jury instruction to preserve for review a claim that the jury charge was legally or factually flawed." *Carlini v. Glenn O. Hawbaker, Inc.*, 219 A.3d 629, 643 (Pa.Super. 2019) (citation omitted). Based on the foregoing, Appellants have waived any challenge to the omission of a comparative negligence jury instruction.

## VI. Compensatory and Punitive Damages

We now turn to Appellants' claim that the trial court abused its discretion in denying its motion for a new trial on the basis that the $3 million in compensatory damages and $8 million in punitive damages awarded by the jury were manifestly excessive. Appellants' brief at 28-31.

> The grant or refusal of a new trial due to the excessiveness of the verdict is within the discretion of the trial court. This Court will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice…. Similarly, our standard of review from the denial of a remittitur is circumspect and judicial reduction of a jury award is appropriate only when the award is plainly excessive and exorbitant. The question is whether the award of damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption. Furthermore, the decision to grant or deny remittitur is within the sole discretion of the trial court, and proper appellate review dictates this Court reverse such an Order only if the trial court abused its

> discretion or committed an error of law in evaluating a party's request for remittitur.

***Tong-Summerford v. Abington Memorial Hospital***, 190 A.3d 631, 650-651 (Pa.Super. 2018) (citation omitted).

With respect to compensatory damages, "this Court will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice." ***Brown v. End Zone, Inc.***, 259 A.3d 473, 486 (Pa.Super. 2021) (citation omitted). A court may consider: "(1) the severity of the injury; (2) whether the Plaintiff's injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony of the Plaintiff [;] (3) whether the injury will affect the Plaintiff permanently; (4) whether the Plaintiff can continue with his or her employment; (5) the size of the Plaintiff's out-of-pocket expenses; and (6) the amount Plaintiff demanded in the original complaint." ***Id.*** at 486-487 (citation omitted).

We review an award of punitive damages for an abuse of discretion. ***Grossi v. Travelers Personal Insurance Co.***, 79 A.3d 1141, 1157 (Pa.Super. 2013), ***appeal denied***, 101 A.3d 103 (Pa. 2014). "Under Pennsylvania law the size of a punitive damages award must be reasonably related to the State's interest in punishing and deterring the particular behavior of the defendant and not the product of arbitrariness or unfettered discretion." ***Hollock v. Erie Insurance Exchange***, 842 A.2d 409, 419 (Pa.Super. 2004) (citation and internal quotation marks omitted). "Punitive damages may be awarded for conduct that is outrageous, because of the

defendant's evil motive or his [or her] reckless indifference to the rights of others." ***Bert Co. v. Turk***, 298 A.3d 44, 61 (Pa. 2023).

Following our review, we conclude that the trial court properly exercised its discretion in denying Appellants' challenge to the amount of compensatory and punitive damages awarded to Appellee. Here, Appellee provided a sufficient evidentiary basis for the jury to conclude that she suffered, and continues to suffer, disfigurement, pain, and humiliation as a result of Dr. Shen's negligent and reckless conduct. The trial court explained as follows:

> Dr. Koch testified extensively about what could have been, and what actually resulted, regarding the treatment of [Appellee]. Such testimony was undisputed, and [Appellee's] testimony described to the jury the damages upon which they were to base any award. Dr. Koch explained the resultant treatment: a hemiglossectomy, which involved removing half the tongue, a left sided neck dissection to remove lymph nodes, radiation and chemotherapy. At the time of the care at issue, [Appellee] was working as a medical compliance manager of a physician's weight control office overseeing eight offices. [Appellee] described how her ability to speak declined dramatically and affected her physically and functionally. Her speech impairment was demonstrated both to the Jury and this Court. She explained that she suffers from lymphedema that frequently requires therapy, paralysis on the side of her face, no feeling under her neck, and needs a special helmet that controls the fluid in her head and neck. She testified about what she suffers as far as eating, as well as her social life. She cannot eat meat unless it is shredded, and she has become isolated due to the humiliation that comes with speaking. She now works at a garden nursery since it does not require her to speak, and finds it too difficult to pursue a romantic relationship. According to Dr. Koch's testimony, all of these issues and conditions stemmed

- 19 -

> from the necessary treatment. No testimony was offered to dispute that, had Dr. Shen referred [Appellee] at a reasonable time, she would have undergone a simple procedure, almost certainly avoiding all of the persistent issues she presently suffers.
>
> . . . .
>
> [Appellee] suffered great harm, as outlined above, solely due to Dr. Shen's willful disregard of an oral lesion. Dr. Shen testified that she knew the lesion was suspicious. She additionally testified that she knew the lesion kept getting worse, and the treatment she prescribed would not make [Appellee's] lesion better.

Trial court opinion, 8/23/24 at 18-20 (citations omitted).

Our review further confirms that, in light of the totality of the record developed at trial, the jury properly exercised its discretion in awarding Appellee $8 million in punitive damages and the trial court did not abuse its discretion in denying Appellants' motion for a new trial or JNOV based on the amount of punitive damages awarded.

## VII.  Weight of the Evidence

The crux of Appellants' remaining arguments are essentially that the jury's verdict was against the weight of the evidence, and that the trial court should have granted Appellants a new trial on this basis. **See** Appellants' brief at 30-31, 41-44.

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, the function of an appellate court on appeal is to review the trial court's exercise

of discretion based upon a review of the record, rather than to consider **de novo** the underlying question of the weight of the evidence. An appellate court may not overturn the trial court's decision unless the trial court palpably abused its discretion in ruling on the weight claim. Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is so contrary to the evidence as to shock one's sense of justice.

. . . .

A trial court's determination that a verdict was not against the interest of justice is [o]ne of the least assailable reasons for denying a new trial. A verdict is against the weight of the evidence where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

**Tong-Summerford**, 190 A.3d at 659 (citations and internal quotation marks omitted).

Our Supreme Court explained:

While a jury's verdict and damages award are generally insulated from challenge, the grant of a new trial may be required to achieve justice in those instances where the original trial, because of taint, unfairness, or error, produces something other than a just and fair result, which is the principle goal of judicial proceedings. ... [A] jury verdict may be set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Where the jury's verdict is so contrary to the evidence as to shock one's sense of justice a new trial should be awarded. [The Court] cautioned that it was within the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses, and if the verdict bears a

> reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgement for the jury's….

*Mader v. Duquesne Light Co.*, 241 A.3d 600, 612-613 (Pa. 2020) (citations and internal quotation marks omitted).

Upon review, we find that the trial court properly exercised its discretion in concluding that the jury's verdict was not against the weight of the evidence. *See* trial court opinion, 8/23/24 at 15-17. "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Kaur v. Singh*, 259 A.3d 505, 509 (Pa.Super. 2021) (citation omitted). Here, the jury heard testimony from a number of witnesses at trial, including Dr. Shen, Appellee, and at least three different expert witnesses. The jury clearly found the testimony presented by Appellee credible and elected not to believe Dr. Shen's version of the events. Upon review, we discern no abuse of the trial court's discretion. The jury's verdict bears a reasonable resemblance to the proven damages, and we are precluded from reweighing the evidence and substituting our judgment for that of the factfinder. *See Mader*, 241 A.3d at 613. Accordingly, Appellants' weight claim merits no relief.

Judgment affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>7/21/2025</u>