J-A26017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER EMERICK ON BEHALF OF HIMSELF AND AS EXECUTOR OF THE ESTATE OF JANET EMERICK | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : | |
| | : | No. 88 WDA 2025 |
| ERIE INSURANCE EXCHANGE | : : | |

Appeal from the Judgment Entered December 17, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-19-15291

BEFORE: OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY OLSON, J.: **FILED: February 27, 2026**

Appellant, Christopher Emerick on behalf of himself and as executor of the Estate of Janet Emerick, appeals from the December 17, 2024 judgment entered in the Court of Common Pleas of Allegheny County upon a jury verdict in favor of Appellant and against Erie Insurance Exchange ("Erie Insurance"). Upon review, we affirm.

The trial court summarized the factual and procedural history as follows:

Janet Emerick was the owner and resident of a home located [] in Economy Borough, Beaver County, [Pennsylvania,] when the home and a separate storage structure nearby were struck by a windstorm during the night of November 17, 2018. The home was constructed in the year 1849 and[, at the time of the windstorm,] had its original, decorative slate roof. The morning after the windstorm, Linda Emerick (Janet Emerick's daughter-in-law) noticed that numerous tree branches had apparently been blown down. One branch penetrated the roof of the separate storage structure, which was referred to as the "spring house." Another

large branch was hanging from the roof of the home where Linda Emerick resided with Janet Emerick. [Appellant] (Janet Emerick's grandson and Linda Emerick's nephew) had been responsible for maintaining the property, and Janet [Emerick] telephoned him and asked for help removing the tree limb from the roof of her home. [Appellant] was in Michigan on a work assignment when Janet [Emerick] spoke to him over the telephone about the tree limb on the roof. On November 19, 2018[,] Linda [Emerick] found there was water leaking into the home from the ceiling of its third floor/attic[. ]Janet [Emerick] telephoned her homeowners insurance company, Erie Insurance[,] and notified it that her home had been damaged by the November 17, 2018 windstorm.

Two or three days after his grandmother telephoned him asking for assistance, [Appellant] went to her home. He observed a tree branch hanging off the roof that was 16 to 18 inches in diameter at its base and 25 to 30 feet long. He placed a ladder near the tree branch and was able to get it to drop from the roof to the ground without injuring himself. [Appellant] believes the tree branch weighed at least 150 pounds. Janet [Emerick made] [Appellant] a joint owner of the property [in] 2019.

Erie Insurance [] adjuster Jason Watkins [("Mr. Watkins")] went to the Economy Borough property on November 25, 2018. He viewed and photographed the damage to the home and the spring house, using a drone to photograph the home's roof from above. Mr. Watkins issued an estimate of $5,020.50 in damages[,] and [based upon the estimate, Erie Insurance sent] a $4,520.50 check [made payable] to Janet [Emerick], reduced by the insurance policy's $500[.00] deductible. Mr. Watkins' estimate allocated $1,726.56 towards the repair of the damage to the home's decorative slate roof. Believing repair of the damage to her home would cost more than $5,020.50, Janet [Emerick] hired public adjuster Brian Pfister [("Mr. Pfister")] to represent her for a fee of 20 percent of any additional payments made by [Erie Insurance]. *See* 63 P.S. [§]§ 1601-1607 and Pennsylvania's Insurance Department regulation at 31 PA. CODE § 115.2 that allows public adjuster compensation to be "expressed as a percentage of any payments to be received on the negotiated claim."

On January 11, 2019[,] Mr. Pfister [sent Erie Insurance] an estimate[, *via* electronic mail, that] he prepared in the total amount of $121,598.77 to repair the home and the spring house. On January 24, 2019[,] Mr. Pfister, Erie [Insurance] adjuster Michele Buck [("Ms. Buck")] and Joshua Hunt [("Mr. Hunt")], a

professional, structural engineer hired by Erie [Insurance], met at [the] property. They inspected the interior of the home and the interior and exterior of the spring house, but the inspection of the roof [on] the home by Mr. Hunt was postponed due to an accumulation of snow on [the roof. Eighteen] days later[,] Erie [Insurance] sent Janet [Emerick], care of Mr. Pfister, a revised estimate [along] with a check for an additional [payment of] $7,751.75. With the $4,520.50 check sent in November [] 2018, this brought the total amount Erie [Insurance] paid on the claim to $12,272.25. On April 2, 2019[,] Mr. Hunt returned to [the] property to inspect the roof. Thereafter, Mr. Pfister, on behalf of Janet [Emerick], and Erie [Insurance] were unable to reach an agreement on the amount of the damages to the home and the spring house. There were two primary areas of disagreement. First, Erie [Insurance] believed the slate roof of the home could be repaired by replacing [four] missing pieces of slate, while Mr. Pfister and Janet [Emerick] believed Erie [Insurance] was obligated to pay the replacement cost for the home's entire slate roof. Second, Erie [Insurance] believed the only repair required for the spring house was replacement of the non[-]slate roof, while Mr. Pfister and Janet [Emerick] believed Erie [Insurance] was obligated to pay for demolition of the entire spring house together with construction of its replacement.

[Appellant commenced an action against Erie Insurance by filing a *praecipe* for *writ* of summons on October 31, 2019. Ultimately, Appellant filed an amended complaint, on April 30, 2020, raising claims for breach of contract and bad faith, pursuant to 42 Pa.C.S.A. § 8371.] In January [2020,] Janet Emerick and [Appellant] had the entire slate roof of the home replaced by asphalt shingles for the price of $19,380[.00]. A suggestion of the death of Janet Emerick was filed in November [] 2021. Before the trial [on] the breach of contract claim began, [Appellant] argued a motion *in limine* to preclude [Erie Insurance] from presenting evidence of [the insurance policy's] functional replacement cost loss settlement endorsement. [Appellant] believed [Erie Insurance] could not assert a provision in its homeowners insurance policy relative to the slate roof of the home that allowed [Erie Insurance] to limit payment to "the amount which it would cost to repair or replace the damaged building with less costly common construction materials and methods which are functionally equal to obsolete, antique or custom construction materials and methods used in the original construction of the

- 3 -

building." [The trial court] denied [the] motion [on January 25, 2024].

[A trial on Appellant's breach of contract claim commenced on January 17, 2024.] The jury had a difficult time reaching a verdict. The jury submitted approximately [twelve] written questions to [the trial court] while deliberating for approximately [nine] hours over the course of [two] days. [The trial court] then submitted to the jury, without objection from counsel, the written question of whether the jurors believed they were hopelessly deadlocked. After receiving a response that [ten] jurors were willing to keep talking but several said they will not change their minds, [the trial] charged the jury on the consequences of them being hopelessly deadlocked. Shortly afterward the jury rendered a verdict[, on January 24, 2024, in favor of [Appellant and awarded damages] in the amount of $19,380[.00].

[Appellant] promptly filed a motion for post-trial relief [that sought] a new trial as to damages only[. The trial court] denied [the motion on May 20, 2024.]

Trial Court Opinion, 4/14/25, at 1-5 (ellipsis omitted; formatting modified).

Judgment was entered in favor of Appellant and against Erie Insurance on December 17, 2024. The judgment was in the amount of $19,380.00 plus an award of interest to be calculated starting on January 14, 2020, and the costs of litigation in the amount of $2,544.75. This appeal followed.[1]

Appellant raises the following issue for our review:

Did the trial court err by failing to grant a new trial for damages after it permitted [Erie Insurance] to submit evidence of a functional replacement cost loss settlement endorsement and argue to the jury that [it] should only award [Appellant] the cost of an asphalt roof as opposed to a slate roof?

_____

[1] Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

- 4 -

Appellant's Brief at 6 (extraneous capitalization omitted).

In his sole issue, Appellant challenges the denial of his request for a new trial based upon an allegedly erroneous evidentiary ruling. *Id.* at 13-25. Specifically, Appellant claims that the trial court erred in denying his motion *in limine* to preclude Erie Insurance from presenting evidence of the insurance policy's functional replacement cost loss settlement endorsement. *Id.*

> Our standard of review when faced with an appeal from the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion. In examining the evidence in the light most favorable to the verdict winner, to reverse the trial court, we must conclude that the verdict would change if another trial were granted. Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining parties. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment.
>
> Moreover, the admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.

*Heffelfinger v. Shen*, 342 A.3d 711, 720 (Pa. Super. 2025) (brackets and ellipsis omitted), *quoting* *Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1226 (Pa. Super. 2011), *appeal denied*, 49 A.3d 441 (Pa. 2012).

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial [court] the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review.

*Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014) (citation and quotation marks omitted), *appeal denied*, 123 A.3d 331 (Pa. 2015), *cert. denied*, 577 U.S. 1008 (2015); *see also Ruff v. York Hosp.*, 257 A.3d 43, 58 (Pa. Super. 2021) (stating, "[w]hen reviewing a trial court's ruling on a motion *in limine*, this Court applies an evidentiary abuse of discretion standard of review), *appeal denied*, 266 A.3d 1064 (Pa. 2021). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Parr*, 109 A.3d at 690 (citation omitted).

In his motion *in limine*, Appellant asserted that Erie Insurance should be precluded from introducing evidence of the functional replacement cost loss settlement endorsement because (1) Erie Insurance never invoked the endorsement in their denial of Appellant's claim, as is required by Section 146.7 of Title 31 of the Pennsylvania Code, and (2) the endorsement "only applies where the damage involves 'obsolete, antique or custom construction materials' and the intended replacement is the functional equivalent." Appellant's Motion *In Limine*, 1/10/24, at ¶¶8-9. Appellant argued that Erie Insurance's initial payment of $1,726.56 to repair the four slate tiles on the roof evidences its concession that the roof was not obsolete, antique or custom. *Id.* at ¶10; *see also* N.T., 1/18/24, at 54 (arguing that Erie Insurance's payment of insurance funds to repair the slate roof and its assertion, now, that the roof is obsolete, antique or custom are contradictory);

Appellant's Motion for Post-Trial Relief, 2/2/24, at ¶16 (arguing that because Erie Insurance's "complete claims adjusting system had information relating to [a] slate [] roof's repair/replacement preloaded in the [software program,] a slate roof cannot be considered [obsolete, antique or custom] as a matter of law"). Appellant further argued that a slate roof is not obsolete, antique or custom because "there are hundreds if not thousands of slate roofs in use today[.]" Appellant's Motion *In Limine*, 1/10/24, at ¶11; **see also** N.T., 1/18/24, at 50 (stating, slate roofs are not obsolete, antique or custom "because they are still being put on"). Erie Insurance countered that to replace or restore Appellant's slate roof to the equivalent of the 1849 slate roof "would cost a lot of money and a lot of premium." N.T., 1/18/24, at 52. Erie Insurance also argued that when the insurance policy originated, the functional replacement cost loss settlement endorsement was incorporated because Janet Emerick elected not to pay the premium required to cover the replacement of a slate roof. *Id.*

In denying Appellant's motion *in limine*, the trial court found that the insurance policy uses "common words," *i.e.*, obsolete, antique or custom, and, therefore, was unambiguous. *Id.* at 55. The trial court held that whether the slate roof was obsolete, antique or custom was a factual question to be determined by a jury. *Id.* at 55 (stating, "it's a contract, what it says and the facts, does it fit within that factually is up to the jury, does it fit within that provision"). As such, the trial court, in denying Appellant's motion *in limine*, held that Erie Insurance was entitled to present evidence concerning the

endorsement to show that the insurance policy did not cover the costs to replace the original slate roof with a new slate roof. *Id.* at 54-55.

"Insurance policies, like all contracts, are enforceable in accordance with the language used[,] and the scope of their coverage may be determined by the [trial] court as a matter of law." *Betz v. Erie Ins. Exch.*, 957 A.2d 1244, 1252-1253 (Pa. Super. 2008), *appeal denied*, 995 A.2d 350 (Pa. 2010). "In construing a contract, the intention of the parties is paramount and the [trial] court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Betz*, 957 A.2d at 1253 (citation omitted).

"Policy language is not rendered ambiguous if the [trial] court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. Mere disagreement between the parties on the meaning of language or the proper construction of contract terms does not constitute ambiguity." *Id.* at 1254 (citations, original quotation marks, and original brackets omitted).

It has long-been recognized that "it is a necessary prerequisite to recovery upon a policy for the insured to show a claim within the coverage provided by the policy." *Id.* at 1256, *quoting Miller v. Boston Ins. Co.*, 218 A.2d 275, 278 (Pa. 1966). "[A] defense based on an exception or exclusion in a policy [(such as the endorsement in the case *sub judice*)] is an affirmative

one, and the burden is cast upon the [insurance company] to establish it."
***Betz***, 957 A.2d at 1256.

Pursuant to the functional replacement cost loss settlement endorsement, the "loss settlement" language of Appellant's insurance policy read, in pertinent part, as follows:

> **Dwelling and Other Structures**
>
> **We** will pay no more than the **functional actual cash value** of the damage until the actual repair or replacement is completed. When the repair or replacement is completed, we will pay the additional amount **you** actually and necessarily spend to repair or replace the damaged part of the property.
>
> If the property is actually repaired or replaced, payment will not exceed the smallest of the following amounts:
>
>   a. the amount which it would cost to repair or replace the damaged building on the same **residence premises** on a **functional replacement cost** basis; or
>
>   b. the actual amount spent to repair or replace the damaged building on a **functional replacement cost** basis.

Appellant's Motion *In Limine*, 1/10/24, at Exhibit B (emphasis in original). The following terms, as defined by the endorsement, were applicable to Appellant's insurance policy:

- **"Functional actual cash value"** means **we** will deduct for depreciation on the amount which it would cost to repair or replace the damaged building with less costly common construction materials and methods which are functionally equal to obsolete, antique or custom construction materials and methods used in the original construction of the building.

- **"Functional replacement cost"** means the amount which it would cost to repair or replace the damaged building with

less costly common construction materials and methods which are functionally equal to obsolete, antique or custom construction materials and methods used in the original construction of the building.

**Id.**

Upon review, we concur with, and the record supports, the trial court's finding that the terms of the functional replacement cost loss settlement endorsement are unambiguous. Because the terms of the endorsement were unambiguous, Erie Insurance could submit evidence pertaining to the functional replacement cost loss settlement endorsement, and the jury could determine whether, or not, Appellant's award should be limited to the cost of an asphalt roof, as opposed to a slate roof, because the slate roof tiles used in the original construction of Janet Emerick's home and their installation qualified as obsolete, antique or custom construction materials or methods.

Appellant, at the time he presented his motion *in limine*, offered no evidence, other than his assertion that slate roofs (in general) are not obsolete, antique or custom because they are still in use and installed today, to show that the terms obsolete, antique or custom were subject to more than one reasonable interpretation.[2] Appellant mistakenly equates the current practice of using slate as a roofing material with the question of whether

---

[2] A term may be found to be ambiguous "if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." **Betz**, 957 A.2d at 153 (citation and brackets omitted).

Appellant's 1849 slate roof was obsolete, antique or custom. The trial court, in denying Appellant's motion *in limine*, determined that the jury could reasonably understand the terms "obsolete," "antique" and "custom," and apply those terms to the credible evidence, as determined by the jury as ultimate fact-finder, when deciding whether, or not, the endorsement limited Appellant's coverage under the insurance policy. Erie Insurance was, therefore, entitled to present evidence, at trial, that Appellant's state roof was, in fact, obsolete, antique or custom to show that the endorsement served as a valid affirmative defense against coverage. As such, we discern no error of law or abuse of discretion in the trial court's denial of Appellant's motion *in limine* to preclude evidence of the functional replacement cost loss settlement endorsement.[3]

To the extent Appellant asserts that the trial court erred in denying his post-trial motion on the grounds that the evidence did not support a finding

---

[3] Moreover, we are unpersuaded by Appellant's assertion that the trial court erred in precluding evidence of the endorsement on the ground that Erie Insurance failed to reference the endorsement when it denied Appellant's claim. Section 146.7 of Title 31 of the Pennsylvania Code requires the insurer to specifically reference the insurance policy provision, condition, or exclusion the insurer is relying on **to deny the claim**. 31 PA. CODE § 146.7(a)(1). Here, the trial court concluded, and the record supports, that Erie Insurance did not deny Appellant's claim. Trial Court Opinion, 4/14/25, at 9 (stating, "Erie [Insurance] did not deny the roof claim. It paid Janet Emerick $1,726.56 for the roof claim, and then there was a disagreement on the scope of the repairs [] but not a denial.") Rather, Erie Insurance determined that Appellant was able to recover under the insurance policy but was not entitled to recover the full sum he believed he was entitled to receive.

that the slate roof was "custom" and that the asphalt roof installed by Appellant was the functional equivalent of the original slate roof, we find this claim raises a challenge to the weight of the evidence. **See** Appellant's Brief at 17 (arguing that the trial court's determination that the decorative slate tiles used in Appellant's roof were custom was legal error).

> Appellate review of a weight claim is a review of the trial court's
>
> exercise of discretion, not the underlying question whether[, or not,] the verdict is against the weight of the evidence. The fact[-]finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses[. ]In determining whether this standard has been met, appellate review is limited to whether the trial [court's] discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a [weight of the evidence] claim is the least assailable of its rulings.

**Getting v. Mark Sales & Leasing, Inc.**, 274 A.3d 1251, 1260 (Pa. Super. 2022) (citation omitted).

Appellant asserts that because Mr. Pfister was able to prepare an estimate for the replacement of the slate roof *via* a claims program used by an insurance company other than Erie Insurance, this demonstrated that a slate roof is not obsolete, antique or custom. Appellant's Brief at 19-20. Appellant also contends that Mr. Pfister, through his testimony, established that slate roofs and asphalt roofs are not functional equivalents. *Id.* at 19.

In denying Appellant's motion for a new trial limited to damages, the trial court explained,

[Appellant] also argues the function[al] replacement cost [loss settlement] endorsement should not have been introduced because the home's slate roof is not within the endorsement's "obsolete, antique or custom construction materials and methods used in the original construction of the building" description. However, Erie [Insurance] adjuster Michele Buck credibly testified that the home's slate roof is a custom feature. It is not solely the slate material that makes the [] home's roof fit within the endorsement as custom. It also is the decorative nature of the roof, with the upper and lower portions displaying rectangular tiles while the middle portion displays elegant, curved tiles. Since the [] roof is custom, [the trial court] did not make an error in allowing the functional replacement cost [loss settlement] endorsement to be introduced.

. . .

[Appellant also argues] that [the trial court] erroneously allowed introduction of the functional replacement cost [loss settlement] endorsement because an asphalt roof is not the functional equivalent of a slate roof. [Appellant] testified during the trial [an asphalt roof and a slate roof] are not functional equivalents because an asphalt roof lasts for approximately 25 years while a slate roof lasts from 50 to 250 years. [The trial court] would agree if it were a new slate roof being replaced. Because construction of the [home's] slate roof dates to 1849[,] and all witnesses at the trial agreed it was close to the end of its useful life, a new asphalt roof that will last 25 more years[,] in fact[,] is the functional equivalent of [Appellant's] slate roof. Therefore, the new asphalt roof is the functional equivalent of [Appellant's] slate roof, and [the trial court] made no error.

Trial Court Opinion, 4/14/25, at 10-12 (record citations omitted).

It is well-established that it is the function of a jury to pass on the credibility of the witnesses and determine the weight to be accorded the evidence presented. At trial, Ms. Buck, an Erie Insurance property specialist, testified that "slate is definitely not an ordinary material used today. It would be something you'd have to absolutely custom request from a builder, and it

would be considered an antique method of doing a roof." N.T., 1/22/24, at 418. Ms. Buck considered slate roofs to be antique or custom but not obsolete because a slate roof is still available as a roofing method. *Id.* at 422-423. In addition, as the trial court observed, the home's slate roof had a custom feature because of the design details of certain tiles. Appellant substantially confirmed this characterization, testifying that the slate roof was comprised of slate tiles of different designs. N.T., 1/18/24, at 208 (stating, "That's the slate right there [(referring to photographs of the slate roof)], and you can see the designs on it and everything else"); *see also* Erie Insurance Exhibit D-1.

Ms. Buck explained that if a slate roof needed to be repaired, *i.e.*, four slate tiles needed to be replaced, Erie Insurance would cover the cost to replace the four tiles because "[y]ou wouldn't put three asphalt shingles on a roof when its already slate." N.T., 1/22/24, at 420. She further explained that if a slate roof needed to be replaced, however, then Erie Insurance, under the functional replacement cost loss settlement endorsement, would cover the cost to replace the slate roof with an asphalt roof due to the antique and custom nature of a slate roof. *Id.* at 423. In evaluating Appellant's insurance claim, Ms. Buck stated that the loss suffered was four slate tiles and that the tiles could be repaired by replacing them with new slate tiles. *Id.* Mr. Hunt, the structural engineer, further testified that, in his opinion, there were only four slate tiles that were damaged due to the tree limb impact and that those four tiles could be repaired. N.T., 1/23/24, at 538-539. Mr. Pfister testified

that "[f]rom the pictures that I was able to take from the ground, it seemed like there was an awful lot of damage. And from what I was able to see, I felt as though the roof needed to be replaced." N.T., 1/22/24, at 250-251.

Mr. Pfister, when asked about the condition of the slate roof, stated that there was no question that the slate roof was 170 years old and that it was showing signs of wear and tear. *Id.* at 256. When asked if the slate roof was at the end of its useful life, Mr. Pfister agreed that "this was probably the event that broke the camel's back. The roof probably couldn't take – well, it just couldn't take anymore." Appellant testified that in his opinion, a slate roof would last between 50 and 250 years, while an asphalt roof could last about 25 years. N.T., 1/18/24, at 208.

In denying Appellant's post-trial motion requesting a new trial solely on damages, the trial court considered the jury's credibility determines in light of the evidence presented at trial. Appellant asserts that the trial court erred because Mr. Pfister was able to generate an estimate for the replacement of the roof using slate tiles and because Mr. Pfister believed that an asphalt roof was not the functional equivalent of a slate roof. Appellant's argument invites this Court to do nothing more than reassess witness credibility and reweigh the evidence in an attempt to convince us to alter the result reached by the jury. The trial court considered the jury's verdict to be in alignment with the evidence presented at trial, namely that the slate roof was custom due to its special design of slate tiles and that an asphalt roof was the functional equivalent of the slate roof, which was at or near the end of its useful life. We

decline Appellant's invitation to alter these assessments since the jury, while passing on the credibility of witnesses and weight of the evidence, was free to believe all, part, or none of the evidence. *Commonwealth v. Dunkins*, 229 A.3d 662, 634 (Pa. Super. 2020), *aff'd*, 263 A.3d 247 (Pa. 2021), *cert. denied*, 142 S.Ct. 1679 (2022). Moreover, we discern no abuse of discretion or error of law in the trial court's determination that the jury's verdict was supported by the evidence and that Appellant was not entitled to a new trial as to damages.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/27/2026